INTERNATIONAL TRUST COMPANY *vs.* ALONZO W. BOARDMAN.

Suffolk.    February 1, 1889. — May 9, 1889.

Present: MORTON, C. J., FIELD, W. ALLEN, C. ALLEN, & HOLMES, JJ.

*Attachment — Insurable Interest of Judgment Creditor — Insolvent Debtor — Powers of Assignee — Ultra Vires — Severable Contract.*

A judgment creditor, with the security of an attachment followed by the levy of execution begun but not completed, may obtain insurance against fire upon the property attached, and after a loss collect and apply the insurance money to his own use, without accounting with his debtor.

An assignee in insolvency in good faith made an agreement with an attaching creditor, in consideration of a release by him of a lien of an attachment and of a levy on execution, to pay the debt out of the proceeds of a sale of the property attached and of other unattached property of the insolvent debtor; and after the sale and the payment of the price to him, but before he paid the debt, he resigned, and a new assignee was appointed. *Held*, that the agreement was valid and enforceable, and that the new assignee was substituted to the liability of the original assignee.

BILL IN EQUITY, filed on January 9, 1888, against Alonzo W. Boardman, the assignee in insolvency of the Goulding Mills, to enforce the payment of a claim of the plaintiff against that corporation, under an agreement made by Mr. Boardman with the plaintiff. The bill was amended by making George F. Kendall, the successor of Mr. Boardman as such assignee, a party defendant. Hearing before *Field*, J., who reported the case for the consideration of the full court, in substance as follows.

The following facts were agreed. On December 17, 1886, and on January 11, 1887, the plaintiff brought successive actions against the Goulding Mills, a corporation duly established and having its usual place of business in Malden, and attached its real estate, other creditors of it meanwhile, on January 5, making like attachments of the same real estate. On April 15, 1887, the plaintiff having recovered judgment against the corporation in its second action of January 11, 1887, and an execution duly issuing thereon, levied on its real estate on March 24, 1887, which levy was suspended. The corporation filed a petition in insolvency on May 14, 1887, the first publication of

notice of the issue of a warrant thereon being made on May 16, 1887, and on June 4, 1887, Mr. Boardman was duly appointed assignee, and accepted the trust.   On June 4, 1887, the plaintiff obtained insurance against fire on its interest in the real estate attached by it to the amount of $8,000, paying premiums to the amount of $167.48 therefor, in four policies, each of which contained the following: " In case of any loss or damage, the company, within sixty days after the insured shall have submitted a statement, as provided in the preceding clause, shall either pay the amount for which it shall be liable, . . . or replace the property with other of the same kind and goodness, — or it may, within fifteen days after such statement is submitted, notify the insured of its intention to rebuild or repair the premises, or any portion thereof separately insured by this policy, and shall thereupon enter upon said premises and proceed to rebuild or repair the same with reasonable expedition.   And whenever the company shall pay any loss, the insured shall assign to it, to the extent of the amount so paid, all rights to recover satisfaction for the loss or damage from any person, town, or other corporation, excepting other insurers; or the insured, if requested, shall prosecute therefor at the charge and for the account of the company."   The policies contained no other provision relating to the substitution or subrogation of the insurer to the rights of the insured.

On July 6, 1887, the real estate and certain personal property, machinery, fixtures, etc. of the insolvent corporation were damaged by fire; and subsequently the plaintiff collected and received under its policies on account of such damage the sum of $3,111.38 over and above the premiums paid by it on such policies.

The plaintiff, by its president, John E. Graham, and Mr. Boardman and one of the other attaching creditors of the insolvent corporation, on August 9, 1887, executed an agreement, which was the agreement in question, as follows:

" Whereas A. W. Boardman has been duly appointed assignee of the Goulding Mills of Malden, we hereby assent to his sale of said mills, including the land on which they stand, the buildings, and all the machinery, engines, boilers, etc., and all fixtures, heating and lighting apparatus, etc., to be sold at public

auction; said Boardman hereby agreeing to pay us the several claims now in suit by us against said mills from the proceeds of such sale, after first paying therefrom the tax of the city of Malden; such claims to be paid in the order of their attachment."

Mr. Boardman, on August 25, 1887, sold the real estate and certain personal property of the corporation not under attachment for $8,600, and received from the purchaser a portion of the price on that date, and the balance on September 15, 1887. On October 3, 1887, the plaintiff's first action of December 17, 1886, then pending, was settled by the payment by Mr. Boardman of $4,059.12 to the plaintiff, and afterwards Mr. Boardman paid the tax to the city of Malden mentioned in the above agreement and the claims of the other attaching creditors of the corporation, leaving a balance of $3,970.72 in his hands, but did not pay the amount due on the execution issued in the plaintiff's action of January 11, 1887, which, including costs, amounted to $3,868.08, that being the amount of the claim in question. Shortly before February 9, 1888, Mr. Boardman resigned as such assignee, and his resignation was accepted, and George F. Kendall subsequently was duly appointed assignee of the corporation, and all its estate was duly assigned to him. No inventory was taken of the property of said insolvent debtor; and it is impossible to determine what proportion of the $8600 received by Mr. Boardman from the sale by him was derived from the sale of the property attached and levied upon by the plaintiff, and what proportion was derived from personal property upon which the plaintiff had no attachment or levy.

The judge also found, in addition to the facts agreed, that the property sold by the assignee on August 25, 1887, was the same property as that described in the agreement in question; that it was not the understanding of both Graham and Mr. Boardman that the amount received by the plaintiff from the insurance policies should be deducted from the claim in suit; that Graham never intended that Mr. Boardman should so understand the agreement; that this matter was not carefully discussed and agreed by the parties, and that, while from some things that were said Mr. Boardman got this understanding, Graham did not have it, and that Graham did not intend to deceive Mr.

Boardman in this respect; and that, upon the making and execution of the agreement, the plaintiff discharged its attachment and levy, in order to enable Mr. Boardman as assignee to convey the property described in the agreement free and discharged of the attachment and levy.

The judge made a decree, that the balance in the assignee's hands should be paid to the plaintiff on account of its claim, which at the date of the decree exceeded, with interest, the amount of such balance.

*L. L. Scaife*, (*B. G. Davis* with him,) for Kendall.

*R. M. Morse, Jr.*, for the plaintiff.

C. ALLEN, J.   There are two questions in this case: first, whether the plaintiff must apply the insurance money upon its claim; and secondly, whether the plaintiff is entitled to enforce the agreement of the assignee.

1. It has often been declared by this court, that where a mortgagee, at his own expense and without any agreement or understanding with the mortgagor, obtains insurance upon his interest as mortgagee, and collects the money from the insurer after a loss, he is not bound to account for it to the mortgagor, nor is the insurer entitled to be subrogated to the mortgagee's claim against the mortgagor.   The insurance is a wholly collateral contract, which the law allows the mortgagee to make. *White* v. *Brown*, 2 Cush. 412.   *King* v. *State Ins. Co.* 7 Cush. 1, 4.   *Foster* v. *Equitable Ins. Co.* 2 Gray, 216.   *Loomis* v. *Eagle Ins. Co.* 6 Gray, 396, 401.   *Suffolk Ins. Co.* v. *Boyden*, 9 Allen, 123.   *Clark* v. *Wilson*, 103 Mass. 219, 221.   *Haley* v. *Manufacturers' Ins. Co.* 120 Mass. 292, 296.   *Washington Mills* v. *Weymouth Ins. Co.* 135 Mass. 503, 506.   The defendant assumes that the insurer is not entitled to subrogation, and asks us to reconsider and overrule the doctrine that the mortgagee is not bound to account for the insurance money to the mortgagor; but we remain satisfied with the rule, and the reasons given for it in the cases above cited.

The defendant then seeks to distinguish this case from the case of a mortgagee; but we see no valid distinction.   A mortgagee is a creditor with the security of a mortgage.   The plaintiff was a judgment creditor with the security of an attachment followed by a levy of the execution begun but not completed.

As such creditor, the plaintiff obtained the insurance, and after a loss by fire collected the insurance money. The debtor was in no way privy to this transaction, and could not have been made chargeable with the premium, and stood no better than a mortgagor.

2. The present defendant, the new assignee, contends that the agreement of Mr. Boardman was unlawful, as promising to give to the plaintiff the benefit of property not attached. The consideration of the agreement was sufficient, it being the release by the plaintiff of its lien upon the real estate. The agreement did not have for its object the withdrawal of property from the general creditors, but the saving of property for them. It is conceded that the motives of Mr. Boardman were good. The agreement therefore was not unlawful because of any improper motive ; but if unlawful, it was so because it was *ultra vires.* This argument, if carried out, must go to the length that an assignee has not the power to put at risk any property, however small, for the purpose of securing any advantage, however great. But this proposition could not be maintained in its full length and breadth; an assignee must be at liberty, within reasonable limits, to expend money for the purpose of benefiting the estate. The statutes require this, by allowing him to prosecute doubtful claims, to avoid preferences and fraudulent conveyances, and to accept and hold under leases. Pub. Sts. c. 157, §§ 26, 46, 51, 96, 98.

It must necessarily be within the power of an assignee to enter into some contracts for the benefit of the estate, although they may involve disbursements. *Abbott* v. *Stearns*, 139 Mass. 168. But, moreover, the statutes expressly provide that " the assignee may redeem all mortgages, conditional contracts, pledges, and liens of or upon any goods or estate of the debtor, or sell the same subject to such mortgage or other incumbrance." Pub. Sts. c. 157, § 46. The plaintiff's attachment and levy constituted a lien, and the statute is broad enough to have authorized the assignee to pay off the lien, or to sell the property subject to it. Of course judgment and discretion must be used, but we have no concern here with the question what his liability might be, upon the settlement of his accounts, in case of negligence or otherwise. Since the assignee had power to

pay off the lien before making sale of the property, he had power to promise to pay it off after making such sale, and that includes the power to make such promise, not absolutely, but limited by the amount that certain specified property should bring when sold.  We cannot, therefore, say that the contract was invalid because *ultra vires.*

There is another view of the case which leads to the same result.  Let it be assumed that the assignee had not the power to promise to apply the proceeds of the unattached property to the payment of the plaintiff's claim ; yet that part of the contract is severable from the rest.  The assignee was not under the agreement bound to sell the whole property, both that which was attached and that which was unattached, for one integral sum, without discriminating how much of the price was for attached property and how much for unattached.  Under this state of things, the consideration being lawful, and the lawful part of his promise being severable from that which was unlawful, he might be held upon so much of his promise as was lawful. *Rand* v. *Mather*, 11 Cush. 1, 7.  *Bishop* v. *Palmer*, 146 Mass. 469, 475, and cases there cited.  *Gelpcke* v. *Dubuque*, 1 Wall. 221.  *Odessa Tramways Co.* v. *Mendel*, 8 Ch. D. 235.  *Pickering* v. *Ilfracombe Railway*, L. R. 3 C. P. 235, 250.  It was therefore his duty to keep the proceeds separate.  He could not by mixing them up enable himself or his successor in office to say that his agreement was unlawful in part, and that therefore there should be no liability whatever upon it.  The duty rested upon him to keep that fund for which he was accountable separate from that for which he was not accountable ; and if by reason of his failing to do so he was unable to show how much of the proceeds of the sale he was entitled to keep, he must account for the whole.  *Lupton* v. *White*, 15 Ves. 432.  *Cook* v. *Addison*, L. R. 7 Eq. 466, 470.  Lewin on Trusts, (8th ed.) 273.  The new assignee, who makes this defence, stands in the place of the original assignee, and is substituted to his rights and liabilities in this respect.

*Decree affirmed.*