EDWARD McLAUGHLIN, Executor, etc., Plaintiff, v. PARK CITY BANK, Defendant.

THOMAS CUPIT, Intervenor, Appellant, v. D. C. McLAUGHLIN, Receiver of the Park City Bank, Respondent.[1]

Assignment for Creditors—Obligation of Creditor—To Accept or Reject — Cannot do Both — Conflicting Rights — Creditor Not Entitled to Both—Selection of One Rejects the Other — Insurable Interest — Of Attachment Creditor —In Attached Property—Proceeds of Insurance—Belong to Whom—Trust—Of Assignment or Receivership—Cannot Exist with Hostile Creditor — Execution Creditor — When Only Entitled to Possession of Property Levied Upon — Hostile Creditor—Cannot Claim Money Arising Out of Insurance Effected by Receiver for Benefit of the Estate.

*Assignment for Creditors—Obligation of Creditor—To Accept or Reject—Cannot do Both.*

While a creditor is under no obligation to accept the provisions of an assignment made for his benefit, yet he cannot hold an assignment good in part and bad in part; neither can he receive the benefits of the assignment while he is in actual hostility to it, claiming in the courts that it is fraudulent and void and refusing to accept its benefits.

*Conflicting Rights—Creditor Not Entitled to Both—Selection of One Rejects the Other.*

A creditor is not entitled to two inconsistent, adverse or conflicting rights; if he accepts the benefit of an assignment knowing the facts he cannot, ordinarily, impeach or repudiate it thereafter, on the ground that it is illegal and fraudulent; nor can he, having repudiated it, take under its provisions as other creditors who have accepted it.

[1] *Cupit v. Bank*, 20 Utah 292, 58 P. 839.

*Insurable Interest—Of Attachment Creditor—In Attached Property —Proceeds of Insurance—Belong to Whom.*

An attaching creditor as well as a receiver has an insurable interest in the attached property, but in either instance the insurance would be a personal contract between the company and the party insuring, and unless there be some contract or trust relation between them, in the event of loss, the insurance money collected would belong to each in his individual or official right.

*Trust—Of Assignment or Receivership—Cannot Exist with Hostile Creditor.*

• While an assignee, or a receiver as his successor, holds the assigned property in trust for such creditors as accept the provisions of the assignment, the trust relation cannot exist between the receiver and a creditor who repudiates the assignment as well as the trust relation.

*Execution Creditor—When only Entitled to Possession of Property Levied Upon.*

An execution creditor is not entitled to possession and rents of the property levied upon, before sale and before the time for redemption has expired.

*Hostile Creditor—Cannot Claim Money Arising Out of Insurance Effected by Receiver for Benefit of the Estate.*

An attachment creditor who sits back, during the pendency of legal proceedings, and allows the receiver of the estate to insure the attached property, for the benefit of the estate, and who all the time is maintaining a hostile attitude towards the receiver and the assignment under which he holds, cannot, after money is collected by the receiver on an insurance policy, claim a trust in his favor on account of his attachment on the burned building which might have satisfied his execution had it not burned.

( Decided Dec. 10, 1900.)

Appeal from the Third District Court Summit County. Hon. Ogden Hiles, *Judge.*

By this action Thomas Cupit, intervenor and appellant, seeks to ovtain the proceeds of certain fire insurance policies in the hands of the receiver of the Park City Bank, and received by him at a time when Cupit, by virtue of his attachment levy, had a lien upon the property, upon which the buildings, afterwards burned, were situated, claiming that the receiver was a trustee for his benefit to the extent of the funds received. From a judgment denying the application of the intervenor the intervenor appealed. *Affirmed.*

*W. I. Snyder*, for appellant.

"The rule is well settled that no equity attaches upon the proceeds of a fire policy in favor of third persons who, in the character of grantee, mortgagee or creditor may have sustained loss in the absence of some trust or contract to that effect." Judge Lurton in *Quarles* v. *Clayton*, L. A. R. 173; May on Insurance, 456; 10th ed. Kent, Vol. 3, 499; 11th ed. Kent, Vol. 3, 376.

The receiver, as such, had an insurable interest, but what was it? It could not attach for the general creditors until Cupit's debt was paid. His interest was limited, so far as it related to the general creditors, it was not unlike a warehouseman or carrier as to them, except that in such case their interest would be paid first, while here the general creditors' interest must be paid last.

As was said by the Supreme Court of the United States:

"It was lawful for plaintiff to insure in its own name goods held in trust by it, and it can recover for their entire value, holding the excess over its own interests in them for the benefit of those who intrusted the goods to it." *Cal. Ins. Co.* v. *Union Compass Co.*, 133 U. S. 387, and cases, L. ed., p. 736; see, also, *Waring* v. *Ins.*

*Co.*, 45 N. Y. 606; *Herkimer* v. *Rice*, 27 N. Y. 180; *Pennefeather* v. *Packet Co.*, 58 Fed. 481; *Quarles* v. *Clayton*, 3 L. R. A. 170, 173.

McLaughlin's possession all this time was subject to the lien of Cupit, therefore, it was *quasi* wrongful to that extent as against him, excepting in so far as Cupit sees fit to ratify his action; and to that extent, and *pro hac vice*, Cupit is a superior *cestui que* trust for the amount of his claim. The same equity which follows trust funds and property through all mutations, and gives them to the *cestui que* trust in their present form, gives the insurance money in this case to Cupit. 2 Pom. Eq. Jur. Sec. 1058; *Diamond Match Co.* v. *Taylor* (Md.), 34, Atl. 1015; *Kinnel* v. *Dickson*, 5 Dak. 221, 25 L. R. A. 309.

This property, in the form of money, is still in the hands of the receiver, a dividend not having been paid since the fire. It is not dissipated and may be traced and appropriated to Cupit's superior claim. *Ferchen* v. *Arndt*, 26 Or. 121, 37 Pac. 161; *Cavin* v. *Gleason*, 105 N. Y. 262, 11 N. E. 504; *Williams* v. *Lilley*, 67 Conn. 50, 37 L. R. A. 150, 155; *Fanning* v. *Insurance Co.*, 46 Ill. App. 215.

This money represents that property. *Williams* v. *Lilley*, 67 Conn. 5 p., 37 L. R. A. 150; *In re Pet. Cavin* v. *Gleason*, 105 N. Y. 262, 11 N. E. 504; *Farchen* v. *Arndt*, 26 Oregon, 121, 37 Pac. 161; *Fanning* v. *Ins. Co.*, 46 Ill. App. 215; *Kimmel* v. *Dickson*, 5 S. Dak. 221, 25 L. R. A. 309; *Grange Mill Co.* v. *Western A. Co.*, 118 Ill. 398, 9 N. E. 274; *People Ry. Co.* v. *Spencer*, 156 Pa. St. 85, 27 Atl. 113; *Diamond Match Co.* v. *Taylor*, (Md.) 34 Atl. 1015.

And the rule of equity in such cases is, that the proceeds go to the one who has suffered the loss, and in the order the property would have gone, regardless of who

effected the insurance. *Williams* v. *Lilley*, 67 Conn. 50, 37 L. R. A. 150; *Gilbery* v. *Port*, 28 Ohio St. 276; *Pennefeather* v. *Baltimore S. P. Co.*, 58 Fed. 481; *Insurance Co.* v. *Warehouse Co.*, 93 U. S. 527.

Suppose the insurance company had exercised the right reserved in the policy, to rebuild. Would not Cupit, without question, thus receive the benefit of the insurance money? *Williams* v. *Lilley*, *supra*; *Washington. Nat'l* v. *Smith*, 45 Pac. 736; *Waring* v. *Indemnity F. Ins. Co.*, 45 N. Y. 606, and cases; *Wyman* v. *Wyman*, 26 N. Y. 253; *Herkimer* v. *Rice*, 27 N. Y. 163; High Rec. Sec. 442; Beach Rec. Sec. 205.

This policy ran to the receiver, a more comprehensive description could not have been selected, and it inures to those only who, in equity, were *cestuis que* trust of the receiver, as to this particular property. *Waring* v. *Ins. Co.*, 45 N. Y. 606; *Williams* v. *Lilley*, *supra*; *Gilbert* v. *Port*, 28 Ohio St. 276.

Since as between vendor and vendee the insurance money represents the property itself, and goes to the one entitled thereto, the same rule must apply as between a receiver and a creditor whom he in his trust capacity represents, and who has during all the receivership a superior lien on the corpus of the property, which equity follows into the insurance money. *Grange Mill Co.* v. *Western Assur. Co.*, 118 Ill. 398, 9 N. E. 274; *Reed* v. *Larkins*, 44 Pa. St. 200; *Hill* v. *Cumberland Co.*, 59 Pa. St. 474; *People's St. Ry. Co.* v. *Spencer*, 156 Pa. St. 85, 27 A. 113; *Gleason* v. *Bank*, 13 Fed. 719, 721; *Pennefeather* v. *Baltimore Steam Packet Co.*, 58 Fed. 481; *Home Insurance Co.* v. *Warehouse Co.*, 93 U. S. 527; *Hawes* v. *Lathrop*, 38 Cal. 433; *Nat'l Bank of D. O. Mills* v. *Ins. Co.*, 26 Pac. 509.

McLaughlin was a trustee for all the creditors at the

time of this last policy, which of course must have been taken out within a year previous to the fire; he insured it as receiver of the Park City Bank, for the benefit of this trust as such; that gives him no right to apportion the money; and the loss therefore inures to the benefit of those creditors who would take the property, and in the order that they would take it. Perry on Trusts, Sec. 487; *Mosher* v. *Lansing Lumber Co.*, (Mich.) 71 N. W. 161; *Lerow* v. *Wilmarth*, 9 Allen, 382; *London & Northwestern Ry. Co.* v. *Glyn*, 1 El. & El. 652; *Pennefeather* v. *Baltimore Steam Packet Co.*, 58 Fed. 481; *William* v. *Lilley*, 67 Conn. 50, 37 L. R. A. 150.

Where a trustee as such insures property in his hands, the law applies it to the beneficiaries as their respective interests appear in the insured property, and according to the same priorities. *California Ins. Co.* v. *Union Compress Co.*, 133 U. S. 387; and authorities, L. ed. 33 Book, p. 736.

Since the lien holder is entitled to the property and its fruits until the entire amount of his claim is satisfied, rents collected by a general receiver in the meantime go to the lien holder in satisfaction of his claim. *Loos* v. *Wilkinson*, 110 N. Y. 195, 18 N. E. 99; see, also, 15 Am. & Eng. Enc. 1 ed. 819; *Williams* v. *Bartlett*, 4 Lea (Tenn.) 620; *Young* v. *Hail*, 6 Lb. 179, 182, 20 Am. & Eng. Enc. Law, 1 ed. p. 37; *Home Ins. Co.* v. *Balt. Warehouse Co.*, 93 U. S. 542.

*Messrs. Brown & Henderson*, for respondent.

When no assignment for the benefit of creditors is made which is for the equal benefit of all the creditors alike without condition (as in this case) the consent of the creditors will in the first instance be presumed until the con-

trary appear. Burrill on Assignments (5th ed.) p. 427–428–492, Sec. 284; *Hasley* v. *Whitney*, 4 Mason, 206; *Lawrence* v. *Davis*, 3 McLean, 177.

" But a creditor cannot hold an assignment good in part and bad in part, if he ratifies it at all he must stand by it." Burrill on Assignments, p. 762, Sec. 476; Burrill on Assignments, p. 766, Sec. 479; p. 769, Sec. 482.

In the case at bar the intervenor has not only made his election but is still standing upon it. *Beifeld* v. *Martin*, 37 Pac. 32 (Colo.); *Valentine* v. *Decker*, 43 Mo. 583; Jefferris's Appeal, 33 Penn. St. 39; *Fellows* v. *Greenleaf*, 43 N. H. 421; *Adler,* etc., *Co.* v. *Peoples Bank*, 46 S. W. 536 (Ark.); *O'Bryan* v. *Glenn,* 17 S. W. 1030 (Tenn.)

An attachment creditor has an insurable interest which he can insure for his own protection. 1st May on Insurance, Sec. 83 p. 150; *International Trust Co.* v. *Boardman*, 149 Mass. 158; *Ins. Co.* v. *Stinson*, 103 U. S. 25.

The owner of the equity of redemption also has an insurable interest to the full value of the property notwithstanding it may be incumbered by a mortgage or other liens. *Carpenter* v. *Ins. Co.*, 16 Peters, 495.

Where real property is encumbered by mortgage or execution, or attachment levy, both the owner of the equity of redemption, and the mortgagee, attachment or execution creditor each have an insurable interest in the property, and each may insure for their own benefit; the owner of the equity of redemption can insure for the full specific value of the property, and the mortgagee, or attachment, or execution creditor, can insure to the full amount of their lien not exceeding the specific value of their property, and where they so insure and a loss occurs they each have a right to recover the full amount of their insurance respectively without accounting in any way to

the other. The insurance under such circumstances is a personal contract between each insured and the insurers, and unless there is some contract between the debtors and creditors to the contrary, they each hold their insurance in their own right. *Carpenter* v. *Ins. Co.*, 16 Peters, 495–501; *International Trust Co.* v. *Boardman*, 149 Mass. 158; *Plimpton* v. *Insurance Co.*, 43 Vt. 497; *White* v. *Brown*, 2 Cush. 412; *King* v. *Ins. Co.*, 7 Cush. 412; *Suffold Ins. Co.* v. *Boyden*, 9 Allen, 123; *Carter* v. *Rockett*, 8 Paige, 437; 1st Jones on Mortgages, section 401; *McDonald* v. *Black*, 20 Ohio, 185; 2 May on Ins., section 449; *Ames* v. *Richardson*, 29 Minn. 333; *Nichols* v. *Baxter*, 5 R. I. 491.

### STATEMENT OF FACTS.

On July 12, 1893, the Park City Bank made an assignment of its property to Edwin Kimball, who qualified as such assignee, and subsequently, in October following said assignee died. On July 12, 1893, Thomas Cupit, the petitioner, and a creditor of the bank, commenced an action in attachment to recover $6,000 from said bank, and levied his attachment upon the property in question in this case consisting of real estate and a bank building located thereon. The attachment proceedings were subsequently held regular by a decision of this court. (See *Cupit* v. *Bank*, 10 Utah, 294.) In July, 1896, Cupit recovered judgment for $7,256.88, and $441.75 costs, and in October, 1897, brought a suit in equity to set aside the assignment of the bank, claiming that it was fraudulent as to him, and to subject the property levied upon to his attachment lien, and the supreme court directed a decree in his favor and for the enforcement of the lien against the property (See 58. Pac. Rep., 839.)

On October, 1893, after the death of Kimball, D. C. McLaughlin was appointed receiver to hold and take charge of the assigned property, and has since continued to act as such receiver. When the receiver took possession the bank building in question was insured, and thereafter in the years 1895-6-7-8 said receiver kept the property insured in his name as receiver. The insurance agent knew of the situation of the property and of the attachment upon it. The premiums were paid out of the funds in the hands of the receiver. In June, 1898, the bank building was destroyed by fire, said building being covered by $5,000 insurance which was paid to the receiver. Mr. Cupit knew of the insurance but paid nothing towards the premiums. The receiver occupied the building after his appointment for his own purposes as receiver and for the benefit of the bank and collected rents from tenants occupying portions of it, and paid the taxes, insurance, and for the repairs thereon. The appellant claims that the receiver occupied the building for 56 months, and that

| | | |
|---|---:|---:|
| A fair rental value would be | $2,800 | 00 |
| That said receiver collected rents of | 4,346 | 45 |
| Received insurance money | 5,000 | 00 |
| Total | $12,146 | 45 |
| That he paid for taxes | $1,803 67 | |
| Paid insurance | 240 00 | |
| Repairs | 261 91 | |
| Heat, light, water, etc. | 2,768 40 | |
| | $5,023 98 | |
| Leaving a balance in his hands of | $7,052 47 | |

On January 29, 1900, Mr. Cupit's judgment aggregated $10,266.55 and on that day the land was sold on execution for $4,500 which sum was credited upon the judgment, leaving unpaid thereon $5,766.55, with interest. The

22 Utah—31.

petitioner, in this proceeding claims that this sum should be paid him by the receiver out of the $7,052.47, so claimed to be in his hands.

The general creditors, with the exception of Cupit, have all assented to the assignment, and have received from the funds of the bank their respective dividends amounting to 25 per cent of their respective claims; but Cupit the petitioner refused to receive any of said dividends, and has denied the validity of the assignment and the right of the receiver to the title or possession of the property, claiming that the assignment was fraudulent, and was made for the purpose of defrauding creditors of the bank, and was invalid, illegal and inequitable.   In his petition in intervention the petitioner alleged that said assignment was fraudulent and void as to the petitioner, and that he, the said Thomas Cupit, had never assented or in any way participated in said assignment, or the benefits thereof, and prayed that said assignment be declared fraudulent and void as to the petitioner, and all other creditors jointing with him in this request, and that the property levied upon by virtue of said execution against the bank be discharged from such receivership.   This court held on appeal of said cause that neither the assignee or receiver acquired any title to the property in controversy, and that it was subject to petitioner's attachment lien.   The petition in intervention in this cause was denied by the lower court, and petitioner Cupit appeals to this court.

After stating the facts, MINER, J., delivered the opinion of the court:

By his petition Thomas Cupit seeks to obtain the proceeds of the fire insurance policies amounting to $5,000, in the hands of the receiver of the Park City Bank, and received by him at the time when Cupit, by virtue of his

attachment levy had a lien upon the property upon which the buildings were burned, and claims that McLaughlin, the receiver, was a trustee and a representative of a court of equity, and whether he was Cupit's trustee for any other purpose than merely to see that this insurance money should go in satisfaction of the debt which the property it represented would have paid, and to see justice done, he was certainly Cupit's trustee for that purpose and should be held liable for the insurance money; that as the court had possession of the property through its receiver, whose title is fraudulent as to Cupit, equity will convert him into a trustee to prevent fraud and to restore the insurance money to the lienor; that because Cupit had rights under the attachment as a creditor of the bank and because the insurance was upon the property he had attached, although his equity of redemption had not expired, he was still entitled to the insurance money, although he paid nothing towards the premiums, and refused to recognize the rights of the receiver in the premises.

We cannot concede such asserted rights upon the part of Mr. Cupit, the intervenor. At the inception of the assignment Mr. Cupit was one of a class of creditors, who were entitled to its benefits and had he accepted it and claimed under it, he would have been entitled to the rights of a general creditor. So, also, after the attachment proceedings against the property of the debtor, if they had proved unavailing, or when they were abandoned, a creditor may, under certain circumstances, still assent and take under the assignment. But the petitioner did not accept or claim under the assignment; on the contrary he rejected the assignment, and has continually refused to claim under it, and has obtained a decree of court which, as to him, rendered the assignment void.

The right of a creditor to share in the benefits of an

assignment is based in part upon his assent. This is one of the conditions upon which he takes under an assignment, and this assent is presumed unless his repudiation is made known. While a creditor is under no obligation to accept the provisions of an assignment made for his benefit, yet he cannot hold an assignment good in part and bad in part. If he ratifies it at all he must stand by it. He cannot accept that part which is beneficial to him, and repudiate the balance of it. Nor can he receive the benefits of the assignment while he is in actual hostility to it, claiming in the courts that it is fraudulent and void and refusing to accept its benefits. He cannot claim benefits under it and at the same time attack it for fraud, and utterly destroy its validity as to him. Burrill on Assignments, Secs. 476-77-79; Jeffries Appeal, 33 Pa. St. 39; *Valentine* v. *Decker*, 43 Mo. 583; *Beifield* v. *Martin*, 37 Pac. 32; *Alder* v. *People's Bank*, 46 S. W. 536; *O'Brien* v. *Glenn*, 17 S. W. 1030.

If a creditor accepts the benefits of an assignment knowing the facts he cannot, ordinarily, impeach or repudiate it thereafter, on the ground that it is illegal and fraudulent. So, having repudiated it altogether, he cannot take under its provision as other creditors would do who have accepted it. The reason of this rule is that he is not entitled to two inconsistent, adverse or conflicting rights. One is necessarily a denial of the other. Burrill on Assignments, (6th ed.) 441; *Alder* v. *Bank*, 46 S. W. 536.

Because of the continued, open and hostile acts of the petitioner towards the assignment, and his continued refusal to accept its terms he is not in a position to claim benefits under it as other creditors who have assented to it are entitled to.

But Mr. Cupit still claims that he is entitled to the

$5,000 insurance obtained by the receiver on a policy of insurance procured by said receiver when he held an attachment lien upon the property.

The property in question was assigned by the bank. The receiver had possession of it and received the rents and repaired it as receiver. As to the creditors of the bank who had accepted the assignment, the receiver had title and was entitled to take charge of the property and hold it until such time as Mr. Cupit's attachment lien would ripen into title by sale thereunder, and until the time for redemption from the sale should expire. The receiver had the same right to the property that the bank would have had had no assignment been made. As such receiver he had the right to insure the property for the benefit of the creditors of the bank, and to pay the premiums from any assets in his hands. He had an insurable interest in the property and was entitled to use it, receive rents from it, repair it, and preserve it from loss the same as any other owner would have, and this right would continue until the title was lost by sale on the execution and the time for redemption had expired. So, Mr. Cupit as attaching or execution creditor, and owner of an equity of redemption, had an insurable interest in the property. 1 May on Ins., Sec. 83; *International Trust Co.* v. *Boardman*, 149 Mass. 158; *Ins. Co.* v. *Stinson*, 103 U. S. 25; *Carpenter* v. *Ins. Co.*, 16 Peters. 495.

The receiver and the attaching creditor had an insurable interest and could insure the property for their own benefit. Under such circumstances the insurance would be a personal contract between the insurance company and each party insuring, and unless there be some contract or trust relation between the insured parties to the contrary, each would hold the money derived by loss of the property by fire in their individual or official right. In

such cases the contract is personal and does not run with the title to the property.   As held in *Carpenter* v. *Ins. Co.*, 16 Pet. 495, the insurance is a mere special agreement with a party seeking to insure himself against apprehended loss on account of his interest in a particular subject matter and not at all incidental to and transferable with the subject matter, and in case of loss satisfaction must be to the person insured.   2 May on Ins., Sec. 6; *International Trust Co.* v. *Boardman*, 149 Mass. 158; *Plimpton* v. *Insurance Co.*, 43 Vt. 497; *King* v. *Insurance Co.*, 7 Cush. 1; *McDonald* v. *Black*, 20 Ohio, 185; *Quarrels* v. *Clayton*, 3 L. R. A. 170.

There are many cases holding that as between a vendor and vendee the insurance money in case of a distribution of the property represents the property itself because of some express or implied contract relation existing between the parties.   Many cases hold because of a contract, express or implied, existing between the parties.   In this case no such relation is shown or exists.   See *Grange Mill Co.* v. *Western Ins. Co.*, 118 Ill. 596.

Had the petitioner insured the property in his own right to cover his interest therein it could not be claimed that the receiver would have any right therein.   So where the receiver insured it and paid the premiums out of funds in his hands belonging to the estate, the insurance became a personal indemnity to the receiver for the benefit of the creditors of the estate he represented.

Mr. Cupit is not one of the creditors who had acquiesced in the assignment.   He had never consented to the assignment in any manner, and has continually opposed it on all occasions, and still continues to do so.   He is not now asking to come in as a common creditor and receive his just proportion of the estate, including the insurance money, in accordance with the provisions of the assign-

ment, but he now demands at the hands of the court the entire fund received under the policy of insurance while refusing to acquiesce in the assignment, and while still holding the proceeds of the sale of the real estate under his execution.

The property of the bank was in effect conveyed in trust for such creditors of the bank as should come in and accept the provisions of the assignment. The assignee and receiver no doubt held the property in trust for such creditors, and this trust relation could not exist between the receiver and a creditor who wholly repudiates the assignment as well as the trust relation. There was no contract relation between the receiver and Mr. Cupit. The real estate in controversy was rightfully held by the receiver with the right to the use, rents and profits thereof for the befinet of the estate until Cupit should acquire title by a sale on his execution. He held an equity of redemption and had, and would have the same rights as the bank would have, had no assignment been made.

An execution creditor is not entitled to possession and rents of the property levied upon before sale and before the time for redemption has expired.

The case of *Cupit* v. *Bank*, 20 Utah 292, 58 Pac. 839, is not in conflict with this position. In that case it was no doubt the intention of the court to hold that the receiver acquired no title to the property that conflicted with the right of Cupit under his attachment lien, and it did not intend to hold that Mr. Cupit would have the right to the title of the property and the possession thereof before sale upon his execution. Under such circumstances Cupit had no right to charge the receiver with the rents and use of the premises which at most would about cover the expense of operating and keeping

the building, etc., in repair, nor has he any right to recover the insurance money claimed in this case.

As said in *Collumb* v. *Reed*, 24 N. Y. 515, "If the plaintiff and the other creditors had affirmed the assignment, the trustee would have been compelled to account for these rents, according to its provisions; but the plaintiff, claiming in hostility to it, must treat the trustee as a stranger, whose only fault has been in suffering himself to be made an instrument, by means of which the debtor has been enabled to apply the rents towards the payment of other creditors."

The receiver was not a trustee for Mr. Cupit in the sense that it was his duty to see that the money collected on these insurance policies should be held for the benefit and paid over to Mr. Cupit to satisfy the execution which the property might have paid if the building had not been consumed by fire.

After careful consideration of the very able arguments and briefs of counsel we can arrive at no other conclusion than as before expressed.

The judgment of the district court is affirmed, with costs.

BASKIN, J. and McCARTY, *District Judge*, concur.