## BRADLEY & METCALF CO. v. McLAUGHLIN et al.

No. 10745—Opinion Filed June 13, 1922.

Rehearing Denied July 25, 1922.

(Syllabus.)

1. **Accord and Satisfaction — Payment by Other Than Debtor.**

An agreement between two parties to give and accept something in satisfaction of a right of action which one has against the other, when performed, is a bar to all actions upon this account, and it is not essential that payment should be made by the debtor himself; and, though it is made by one who is not a party to the contract and not in privity with the debtor, yet, if accepted in satisfaction of the contract, it will discharge the obligation.

2. **Appeal and Error—Review—Findings —Conclusiveness.**

Where a case is tried by the court without the intervention of a jury, upon controverted questions of fact, and there is evidence reasonably tending to support the findings made, such findings will not be disturbed on appeal.

3. **Accord and Satisfaction—Defense to Action on Note—Affirmance.**

Record examined, and held, that the trial court committed no reversible error, and the judgment in the instant case is, therefore, affirmed.

Error from District Court, Mayes County; E. B. Arnold, Judge.

Action by the Bradley & Metcalf Company against A. T. McLaughlin, W. T. Holland, J. D. Colvard, and C. L. Pratt, Jr., on promissory note. Judgment sustaining defense of accord and satisfaction, and plaintiff brings error. Affirmed.

Norman E. Reynolds and Paul C. Williams, for plaintiff in error.

Campbell, Leahy & Brewster, for defendants in error.

JOHNSON, J. This is an appeal from the district court of Mayes county; Hon. E. B. Arnold, Judge.

The defendants were indebted to plaintiff on a promissory note in the sum of $1,495.25, plus interest and attorney's fee, said note bearing date, August 11, 1914, and maturing October 1st, and on which note suit was filed in the district court of Mayes county, Okla., November 5, 1914. The defendant A. T. McLaughlin was engaged in the mercantile business at Salina, Okla. McLaughlin sold his mercantile business to one E. J. Bigham, and in compliance with the Bulk Sales Law, Bigham, on November 19, 1914, notified creditors of McLaughlin, including plaintiff, that he expected to purchase McLaughlin's stock of goods at Salina and would take the stock over on Monday, November 30, 1914. That Addison Brown, representing certain creditors, went to Salina on November 30th to be present when the deal between McLaughlin and Bigham was closed. That the sale was consummated and the entire proceeds deposited in the bank at Salina, drafts being mailed out to the various creditors by Addison Brown, together with a report thereon, and on the same date Brown wrote to Mosier, Greenslade & Dudley, attorneys for plaintiff, as follows:

"Gentlemen: I am enclosing you herewith draft for $984 and note for $700.-36, the same being in settlement of the amount due your client, the Bradley Metcalf Shoe Company. I am also enclosing you a copy of the report I made in this matter, which was mailed direct to all creditors. Inasmuch as other parties signed the original note in this matter, I suggested to Mr. McLaughlin that he have the same parties sign the note for the balance due.

"Very truly yours,

"Addison Brown."

That attorneys for plaintiff received the draft, cashed the same, and credited the amount as a part payment on the original note sued upon, but refused to accept the note tendered in settlement of the balance of the claim and returned the note to Addison Brown with advice that the plaintiff would proceed with its suit upon the original note for the balance due.

That by agreement of the parties a jury was waived and case tried by the court on the 2nd day of April, 1919. And the court, after hearing the evidence and argument of counsel, rendered judgment as follows:

"I find in this case that on the 3rd of December, 1914, Addison Brown, on behalf of A. T. McLaughlin, mailed to the firm of Mosier, Greenslade & Dudley, at Muskogee, a letter, together with check for $984 and a note for $700.36, with specific instructions not to accept the draft unless they also accepted the note. I do not find that the agreement between Addison Brown on behalf of Mr. McLaughlin and the firm of attorneys representing the creditors in this case has ever been changed, and therefore it is the judgment of the court that, having accepted that draft for $984, that the note sued on in question is canceled and the defendant be required to deliver to the plaintiff these notes."

The court rendered a judgment accordingly. The plaintiff filed a timely motion for new trial, which was overruled by the court, to which the plaintiff excepted, and thereafter commenced this proceeding in error to reverse the judgment of the trial court, and assigns specifications of error as follows:

"1st. That said court erred in overruling the motion of plaintiff in error for a new trial.

"2nd. Said court erred in overruling objection of plaintiff in error to the introduction of any evidence upon the answer and upon the part of the defendants in error.

"3rd. Said court erred in overruling demurrer of plaintiff in error to the evidence of the defendants in error.

"4th. Said court erred in admitting evidence upon the part of the defendants in error.

"5th. Said court erred in the findings made for the defendants in error.

"6th. Said court erred in the assessment of the amount of recovery.

"7th. Said court erred in rendering judgment for defendants in error and against plaintiff in error."

Concerning which counsel for plaintiff in error stated in their brief as follows:

"Upon the trial of the case the plaintiff, as the record will disclose, made two contentions: (1) That there was no accord and satisfaction, and (2) that there was no 'renunciation' of the rights of the plaintiff in error against the defendants under the instrument set forth in its petition, but at this time plaintiff in error stands squarely upon the proposition that there could not be under the pleadings and under the facts and circumstances shown such renunciation, and the court erred in so finding.

"It is the contention of plaintiff in error that the answer did not state facts sufficient to constitute a defense to plaintiff's cause of action, and that therefore the court erred in overruling the plaintiff in error's objection to the introduction of any evidence on behalf of defendants in error, and the evidence adduced being merely in conformity to and going no further than the facts pleaded in the answer the court erred in rendering judgment for defendants in error and in overruling the motion for a new trial. It will thus be seen that all the assignments of error may be treated as one.

"The questions thus presented in this case are: Was there a renunciation of the instrument sued upon? and, Can such renunciation be shown by parol, as in this case?"

Section 4172 of the Revised Laws of Oklahoma, 1910, is as follows:

"The holder may expressly renounce his rights against any party to the instrument, before, at or after its maturity. An absolute and unconditional renunciation of his rights against the principal debtor made at or after the maturity of the instrument discharges the instrument. But a renunciation does not affect the rights of a holder in due course without notice. A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon."

As we view the record, the section of the statute, supra, has no application.

The plaintiff's cause of action is based upon a promissory note signed by the defendant, the principal defendant, maker of the note, being A. T. McLaughlin, who was a merchant and owned a stock of goods at Salina, Okla. After negotiations with one Bigham, he arranged a sale of such stock of goods to Bigham, and, upon due notice given as required by statute, the sale was consummated without objection on the part of the creditors and the money realized turned into the hands of Addison Brown, as trustee or representative, to be disbursed by him pro rata to the several creditors, notes to be supplied for the balance owing. Thereupon, Addison Brown, acting in such capacity, and with the figures showing the

indebtedness owing to each creditor, and particularly to the plaintiff, prepared and transmitted to each creditor a draft and note, as contemplated in said sale and settlement, specifically directing that an acceptance of the draft was not to be made unless the note was also accepted, with full liquidation of the indebtedness owing to the creditor receiving the draft and note. This statement was sent to the attorneys authorized to receive the same for the plaintiff, and whose authority is unquestioned by the plaintiff, and admittedly the attorneys cashed the draft and appropriated the funds toward the payment of the debt owing to the plaintiff. This statement of facts was the statement by the defendants in their answer. This statement of facts was controverted by the plaintiff in the reply, the plaintiff pleading in contravention of the facts pleaded by the defendants that the draft was received and cashed, but with the express agreement and understanding that the same constituted part payment of the note sued on, and that the plaintiff should have judgment on the note sued on for the balance due at the March, 1915, term of the court.

So that, by the pleadings, which must necessarily determine the issues in the case, the question to be decided was whether or not there had been a settlement of the indebtedness owing to the plaintiff by the defendants, as pleaded by the defendants, and denied by the plaintiff. The court, upon this issue, found from the testimony adduced by the parties that such settlement had been made.

Section 4169, Revised Laws 1910, in part provides as follows:

"A negotiable instrument is discharged.
"First. By payment in due course by or on behalf of the principal debtor; * * *

"Fourth. By any other act which will discharge a simple contract for the payment of money;

"Fifth. When the principal debtor becomes the holder of the instrument at or after maturity in his own right."

The testimony of the defendant consisted in part of the letter and report of Brown, transmitting to the attorneys of the plaintiff the draft and new note, Brown's testimony, and the testimony of A. C. Brewster, attorney for the defendant, McLaughlin.

The letter and report were as follows:

"Addison Brown, Lawyer, Room 904-5 Woodruff Bldg., Springfield, Mo.
"Dec. 3, 1914.

"Mosier, Greenslade & Dudley, Attorneys, Muskogee, Oklahoma. Gentlemen: Re A. T. McLaughlin, Salina, Okla. I am enclosing you herewith draft for $984 and note for $700.36, the same being in settlement of the amount due your client, the Bradley Metcalf Shoe Company. I am enclosing a copy of the report I made in this matter which was mailed direct to all creditors. I am every certain that this is a good settlement, and feel sure that your client will be satisfied with it. Inasmuch as other parties signed the original note in this matter, I suggested to Mr. McLaughlin that he have the same parties sign the note for the balance due.

"Very truly yours,
"Addison Brown."

Defendants' Exhibit "C."
"Springfield, Mo., Dec. 3, 1914.

"Dear Sir: I went to Salina on November 30th to be present when the deal between McLaughlin and Bigham was closed. I experienced considerable difficulty in getting the matter through. Mr. McLaughlin had not been able to induce W. A. Graham to release the store building on account of the other security and payments that had been made on the debt. He had paid out every cent he could raise in freeing the real estate traded from incumbrance and by trying to make some collections, and had become convinced that it would be impossible for him to pay his creditors the balance that would be due them in three and four months as he originally expected. In fact, he and his attorney had just about decided to file a voluntary petition in bankruptcy and let the deal drop. If this had been done, his wife could have kept her residence at Salina, which he was putting in on the deal and he could have claimed 160 acres as a homestead, which would be practically all of the farm that was valuable. After much effort and by agreeing to give them until October 15, 1915, to pay the balance, they decided to close the deal and this was done. I am enclosing you herewith draft for $984, which is 58.43 per cent. of the amount due you, and a note for $700.36, which is 41.58 per cent. of the amount due you. The draft is sent on condition that it is not to be accepted unless the note is accepted. The claims due wholesalers totaled $10,832.58. The balance left after deducting the $671.15 from the $7,000 received was $6,328.85. Having to pay the $671.15 reduced the dividend expected from 65.13% to 58.42%. All creditors present were very anxious for this settlement to go through in this way. I represented about $6,500 of the indebtedness, and of course saw that it was by far the best thing to do. The notes are to be secured by a deed of trust on the New Moore Hotel at Miami, Okla., subject to a prior incumbrance of $10,138.23. The hotel was valued at

$25,000 in this deal. Mr. W. S. Harned, a merchant at Miami, said the hotel was worth $20,000. It rents for $150 per month. The mortgage that is now on it is to be reduced by the application of the rent, beginning February 19th. The hotel is a three-story brick structure with 53 rooms. It is the best hotel in Miami. They are doing a fine business. Mr. McLaughlin expects to pay these notes by the sale of real estate that belongs to himself and wife and by the collection of notes and accounts. In cases where wholesalers are represented by attorneys, I am sending a copy of this letter direct to their attorneys, also draft for the amount due as well as the note. The deed to the hotel property has not been delivered to Mr. McLaughlin and will not be until the deed of trust is executed to secure these notes. I will have the deed of trust executed right away and send it to him for signature and acknowledgment. Please promptly notify me of your approval of this settlement. I promised Mr. McLaughlin that I would let him know promptly as soon as approvals were received.

"Yours very truly,

"Addison Brown."

Brown testified in part:

"Q. Isn't it a fact, Mr. Brown, that you had a conversation with Mr. Mosier and he told you that he would not accept the settlement that was being offered at all, and that he could cash the draft and return the notes, or return both, leaving it up to you to decide which he would do? A. No, sir; I am absolutely sure I would not have done that, because I do not do business that way. I would never let Mr. Mosier retain that check except on the conditions in that telegram, because I was under moral obligation not to do so. Q. Did Mr. Mosier tell you, in the telephone conversation, after the note and check had been sent by you, that he had no authority whatever to make a compromise settlement? That he had no authority to accept anything less than a hundred cents on the dollar and could not receive the notes and the check on the conditions under which they were sent? Mr. Brewster: Objected to as incompetent, irrelevant, and immaterial. The Court: Objection is overruled. Mr. Brewster: The defendant excepts. A. I am absolutely sure that Mr. Mosier did not get my consent to accept these notes except on the condition named in that general letter and on the conditions named in the telegram. I would not have given it under any circumstances. I was not personally interested in the matter. It was just a matter of honor with me, and I would not have, under any circumstances, consented to him taking the money except as stated in that telegram. Q. At the time you sent out these notes, did you know that the notes covering this account was signed by other parties than McLaughlin? A. Yes."

A. C. Brewster testified in part as follows:

"Q. What did they say relative to this proposed sale? Mr. Reynolds: Now, if the court please, the plaintiff objects unless the defendant shows whom he means by 'they'. A. The members of the firm of Mosier, Greenslade & Dudley, with whom I took up the matter. Q. And not the conversation with the ladies? A. No. They made no objection to it. Mr. Reynolds: We object unless he shows who it was had with. A. I could not do that. It was with one of these members. One of the members of the firm. I know Mr. Mosier personally and I am quite sure he was not there. I introduced myself and whichever one I talked with told me who he was, and I then made my statement to him. The Court: The objection is overruled. Mr. Reynolds: The plaintiff excepts. Q. Do you know whether the deal and proposition about which you talked to the members of the firm was consummated after that? Mr. Reynolds: Objected to for the reason there is no testimony as to what the deal referred to was. The Court: The objection is overruled. Mr. Reynolds: The plaintiff excepts. A. I do. Q. Was it closed? A. It was. Q. Was any objection offered on the part of the firm of Mosier, Greenslade & Dudley to the proposed settlement or compromise prior to the drafts and notes being sent out? Mr. Reynolds: Objected to as incompetent, irrelevant, and immaterial. The Court: The objection is overruled. Mr. Reynolds: We except. A. There was not, as far as I know. The Court: Did you have any agreement with them that they were to accept the payment and continue with the suit? A. No, sir; none whatever. I never heard of that until I received his communication. I think I have a copy or something that shows that. That claim was made after that acceptance and after the drafts were received by the firm of Mosier, Greenslade & Dudley and after they had taken the money."

The defendants' answer contained the following averments:

"The defendants, for their answer to the petition herein filed, say, that they admit that at the time of the filing of the suit herein that they were indebted to the plaintiff in the sum set out in said petition.

"For further answer and by way of plea to said petition defendant alleges and states that at this time they are not indebted to plaintiff in any sum or sums, whatever, for the reason that settlement and payment has been made and accepted by plaintiff; said defendant alleges and shows to the court that since the filing of this suit the following has taken place, to wit:

"Defendants show to the court that on or about the 1st of November, 1914, defendant

A. T. McLaughlin began negotiations with one E. J. Bigham for the sale or exchange of his stock of goods in Salina, Okla.; that said stock of goods was to be sold in bulk and in order to conduct said sale fairly and legitimately said A. T. McLaughlin furnished to said E. J. Bigham, the prospective buyer, a full, true and correct list of all the creditors having claims against him, together with their addresses and the amount of each claim, and in pursuance of said transfer and sale said transferee caused the above named plaintiff to be notified of the intended purchase by the said E. J. Bigham of the bulk stock of the said defendant A. T. McLaughlin, which said notice is in words and figures as follows, to wit (omitting the address):

"Salina, Okla., Nov. 19th, 1914.

"I am expecting to buy the A. T. McLaughlin stock of goods at Salina, Okla. The Bulk Sales Law statement shows to be due your company $1,684.36 and I presume the matter has been taken up with you by Mr. Brown of Springfield, Mo., who is representing a number of creditors. I will take the stock over on Monday, November 30, 1914.

"Yours very truly,

"E. J. Bigham "

The testimony of Mr. Mosier and another member of the firm of Mosier, Greenslade & Dudley, attorneys for the plaintiff, supported the allegation of the plaintiff contained in the reply to the allegations contained in the defendants' answer. They alleged in their reply, in substance, that since the commencement of this suit, there had been paid on plaintiff's claim the sum of $984, which sum was received with the expressed agreement and understanding that the same constituted part payment on the note sued on, and that each and all of the defendants herein should be and remain liable thereon, and with the distinct understanding and agreement that plaintiff should have judgment on the note sued on herein for the balance due at the March, 1915, term of the court. Said testimony was in direct conflict with testimony of the defendants in support of the allegation of the defendants' answer that the check for $984 was not to be cashed unless the new note for $700 was likewise accepted. The defendants' answer, with the exhibits thereto attached, was, in effect, that the note sued on by the plaintiff had been paid and discharged.

In the case of First National Bank of Tishomingo v. Latham, 37 Okla. 286, 132 Pac. 891, in the fifth paragraph of the syllabus thereof, the court, under a state of facts where a delivery of chattels was made in settlement of a liquidated amount, holds as follows:

"Accord and Satisfaction — Payment — What Constitutes—Definition. Where, in the delivery of chattels in settlement of a liquidated amount, no valuation of the property is fixed or agreed upon at the time, the act constitutes, not a payment in property, but an accord and satisfaction, though having the effect of discharging the indebtedness."

And, in the body of the opinion, states as follows:

"Under such circumstances, the delivery of the property constitutes not alone a satisfaction or settlement of the debt, but a payment thereof, as distinguished from an accord and satisfaction. It is not the result reached, namely, the extinguishment of the debt, but the means of its discharge, that we are considering. Both payment and accord and satisfaction may extinguish the debt, but by different processes."

And, quoting further, Houston Bros. v. Wagner, 28 Okla. 367, 114 Pac. 1106, the court adopts the rule enunciated therein as follows:

"An agreement between two parties to give and accept something in satisfaction of a right of action which one has against the other, when performed, is a bar to all actions upon this account."

That this may be accomplished by the payment in property other than money and by a person other than the debtor himself, is held in the Oklahoma case of Wallingford et al. v. Alcorn, 75 Okla. 295, 183 Pac. 726. The fifth and sixth paragraphs of the syllabus are:

"It is not essential that payment should be made by the debtor himself; and, though it is made by one who is not a party to the contract and not in privity with the debtor, yet, if accepted in satisfaction of the contract, it will discharge the obligation.

"Notwithstanding Rev. Laws 1910, sec. 4234, providing that a negotiable note is payable in money only and without any condition not certain of fulfillment, the parties may by agreement fix a price at which property delivered by the debtor to the creditor shall be valued, and, when so received, it is a payment, and equivalent to a payment of so much money."

That a debtor has the undoubted right to attach to his tender of payment such condition as he pleases, is stated in 1 Corpus Juris, under Accord and Satisfaction, pages 561 and 562:

"Nevertheless it is elementary law that a debtor has the right to attach to a tender such lawful condition as he pleases. And

therefore, where a sum of money is tendered in satisfaction of the claim, and the tender is accompanied with such acts and declarations as amount to a condition that if the money is accepted it is accepted in satisfaction, and such that the party to whom it is offered is bound to understand therefrom that if he takes it he takes it subject to such condition, and an acceptance of the money offered constitutes an accord and satisfaction in the absence of fraud, imposition, or mistake. And this is so wholly irrespective of the grounds upon which defendant declines to pay, and proposes to deny his liability for, the balance. The acceptance is an assent de facto and the creditor is bound by it. Nor is it necessary that there be express words of assent to the proposition. On the contrary the rule applies with full force and effect, although the creditor protests at the time that the amount paid is not all that is due, or that he does not accept it in full satisfaction of his claim. Where the tender or offer is thus made, the party to whom it is made has no alternative but to refuse it or accept it upon such condition. If he accepts it, he accepts the condition also, notwithstanding any protest he may make to the contrary."

"The foregoing principles relating to acceptance in satisfaction find very frequent application in the case of checks and drafts."

In this work, the further holding is that it makes no difference upon what ground the debtor declines to pay, the acceptance by the creditor will bind him.

In the case of Canton Union Coal Co. v. Parlin & Orendorff Co., 215 Ill. 244, 74 N. E. 143, the binding effect of the acceptance of a tender of a certain amount of money by a debtor to a creditor is set out as follows:

"If a certain amount is tendered by a debtor, accompanied by acts or declarations amounting to a condition that, if the creditor takes it, he does so in full satisfaction of his demand, and the sum tendered is accepted, the entire demand is satisfied, although the creditor protests at the time that the amount is not all that is due, or that he does not accept it in full satisfaction of his claim."

And that the creditor cannot accept part and decline part, is held in the case of Lapp et al. v. Smith et al. (Ill.) 55 N. E. 717, where, in the first paragraph of the syllabus, it is said:

"Where a check and certain notes are tendered in settlement of an unliquidated disputed claim, the acceptance of the check carries with it the acceptance of the notes as a settlement, and the check cannot be retained, and notes returned, and an action maintained for the balance of the claim."

And, in the body of the opinion, on page 719, the court holds that:

"The doctrine of the case is that the legal effect of the act of retaining the check was an acceptance of the same on the conditions upon which it was tendered. In Fuller v. Kemp, 138 N. Y. 238, 33 N. E. 1035, 20 L. R. A. 785, which involved the same principle, it was said: 'The tender and the condition could not be dissevered. The one could not be taken and the other rejected. The acceptance of the money involved the acceptance of the condition, and the law will not permit any other inference to be drawn from the transaction. Under such circumstances, the assent of the creditor to the terms proposed by the debtor will be implied, and no words of protest can affect the legal quality of this act.'"

That a debtor may show by parol testimony that a written instrument for the payment of money has been satisfied, is set out in 17 Cyc. 691, under "Evidence," and the rule announced as follows:

"Where a writing evidences an obligation or a promise to pay money, or is based upon a money consideration, it is admissible to show by extrinsic evidence that the money has been paid, or the obligation satisfied. And this is true even though the evidence tends to show a payment or satisfaction other than in money or in the method provided by the writing, provided the payment or satisfaction actually made has been accepted by the parties as a compliance with the obligation which the writing shows; or is in accordance with an agreement that the obligation may be satisfied in that manner. A person liable upon a written instrument may show that his liability has been discharged by accord and satisfaction."

Also, in 30 Cyc. 1290, considering methods of payment of indebtedness, the writer of the text states:

"Parol evidence is admissible to show that a debt has been paid, although the debt is evidenced by a writing. So parol evidence is admissible to show that an assignment, although absolute on its face, was taken simply as security."

This rule also applies as to the manner and method of liquidating a note, as appears from the recent case of Hartley et al. v. Riley, No. 10488, 85 Okla. 101, 204 Pac. 920, where the court says:

"The manner and method of liquidating a note may be shown by parol, and may arise from contemporaneous agreement resting entirely in parol"—citing a number of authorities.

And payment may be made in property other than money, and is a jury question.

30 Cyc. pages 1295, 1297, and 1298, as follows:

"Whether there was an agreement to receive property other than money from a debtor in payment is a question for the jury. For instance, whether a note, including a note of a third person, or a bill, check, or order on a third person, was accepted as absolute or conditional payment is one for the jury."

"The verdict of a jury, or finding by the court or a referee, where there is an issue as to payment, is governed by the general rules relating to verdict and findings in civil actions in general. Where the evidence as to payment is conflicting, the general rule as to the conclusiveness of a verdict based on conflicting evidence is applicable."

This question as to whether or not there was an acceptance by the creditor of payment is a jury question, as shown above, and when passed upon by a jury, or the court sitting as a jury, as in this case, upon conflicting question of fact as in this case, the judgment will not be disturbed upon appeal by the Supreme Court. Anicker v. Doyle, 84 Okla. 62, 202 Pac. 281, first paragraph of the syllabus:

"When the court tries both questions of law and fact in an action wherein the parties are entitled to trial by jury, the judgment of the court stands in lieu of the verdict of the jury, and on appeal this court will not weigh the evidence, but if there is any evidence reasonably tending to support the judgment of the trial court, its judgment will not be disturbed."

See, also, Nelson v. Golden, 84 Okla. 29, 202 Pac. 308, and Lieberman v. Merring, Martin & Boise Co., 84 Okla. 168, 203 Pac. 1045.

2 Ruling Case Law, 676, sec. 32, in part states the necessary requirements for the validity of an assignment, as follows:

"The general rule, both in England and the United States, is that a voluntary transfer of property by a debtor to a trustee for the benefit of creditors does not pass title to the trustee until it is assented to, either expressly or impliedly, by the creditors whose claims are intended to be secured. Creditors participate, if at all, voluntarily, and if they refrain from so doing, their demands and their remedies thereon are unaffected, except to the extent that the debtor's property is lawfully withdrawn from their reach by the assignment, if accepted by others. A creditor must accept or reject an assignment unequivocally. He cannot accept that part which is beneficial to him and reject the balance, though it is held that he may lawfully qualify his as-

sent to an assignment by excepting certain of his demands from its operation. Acceptance may be either express, or by some act inconsistent with a repudiation. If he accepts it with full knowledge of the facts, he is bound by all the terms of the assignment and will not be permitted later to assail it; and it would seem that this is true even though the assignment is fraudulent."

As to the duty of a creditor when he is apprised of the facts and the conditions under which a settlement is made by a debtor with a creditor, 5 Corpus Juris, page 1063, states:

"While a creditor may elect whether he will accept or reject the assignment, yet he must accept or reject it as an entirety."

This rule is supported by numerous authorities, among which is Edward McLaughlin v. Park City Bank, 22 Utah, 473, 54 L. R. A. 343, first paragraph of the syllabus:

"While a creditor is under no obligation to accept the provisions of an assignment made for his benefit, yet he cannot hold an assignment good in part and bad in part. Neither can he receive the benefits of the assignment while he is in actual hostility to it, claiming in the courts that it is fraudulent and void, and refusing to accept its benefits."

Also, Hatchett v. Blanton, 72 Ala. 433, where it is held, cited in the notes to 24 L. R. A. 379:

"When a debtor voluntarily assigns property for the security and benefit of creditors, if the creditors choose to accept the assignment, they must abide by its terms or provisions; they must take it as an entirety, and cannot take in part or repudiate in part; they must either reject or accept it as a whole." Frierson v. Branch, 30 Ark. 453.

This doctrine is also approved in the case of First National Bank of Blanchard v. Richburg, 75 Okla. 1, 181 Pac. 145, where it is stated in the second paragraph of the syllabus as follows:

"Where a creditor elects to accept, and does accept, the benefits of provisions favorable to him in a deed of assignment, and avails himself of the provisions favorable, he cannot thereafter attack the instrument on the ground of fraud, because of other provisions favoring all creditors alike."

And also, in the body of the opinion, as follows:

"It is also a settled principle of law that where a creditor elects to accept, and does accept, the benefits of a provision favorable to him in a deed of assignment, he cannot thereafter attack the provisions con-

tained in it in favor of other creditors on the ground of fraud; he must accept or reject it unequivocally. 2 R. C. L. 32, p. 676; Alliance Milling Co. v. Eaton, 86 Tex. 401, 25 S. W. 614, 24 L. R. A. 369; Mc-Laughlin v. Park City Bank, 22 Utah, 473, 63 Pac. 589, 54 L. R. A. 343; Frierson v. Branch, 30 Ark. 453; Adler-Goldman Commission Co. v. People's Bank, 65 Ark. 380, 46 S. W. 536; 4 Cyc. 277, 278."

The examination of the entire record discloses that there is competent evidence reasonably tending to support the judgment of the trial court. The trial court committed no reversible error. The judgment of the trial court is therefore affirmed.

McNEILL, MILLER, ELTING, KENNAMER, and NICHOLSON, JJ., concur.