## LOCAL REALTY CO. v. LINDQUIST et ux.

No. 6004.   Decided December 17, 1938.   (85 P. 2d 770.)

*Stephens, Brayton & Lowe* and *Calvin Behle,* all of Salt Lake City, for appellant.

*F. Henri Henroid,* of Salt Lake City, for respondents.

LARSON, Justice.

This action presents the question: Is the owner-mortgagor who is in actual possession of real estate from the time of sale under mortgage foreclosure to expiration of the redemption period,—when he does not redeem,—liable to the mortgagee-purchaser at the sale for the rental value of the premises during the redemption period?

This involves a construction of Section 104-37-37, R. S. U. 1933, which reads as follows:

"The purchaser from the time of sale *until a redemption,* and a redemptioner from the time of his redemption *until another redemption,* is entitled to receive from the tenant in possession the rents of the property sold or the value of the use and occupation thereof. *But when any rents or profits have been received by the* judgment creditor or purchaser, or his or their assigns, from the property thus sold preceding such redemption, *the amounts of such rents and profits shall be a credit upon the redemption money to be paid;* and if the redemptioner or judgment debtor, before the expiration of the time allowed for such redemption, demands in writing of such purchaser or creditor, or his assigns, a written and verified statement of the amounts of such rents and profits thus received, *the period for redemption is extended five days* after such sworn statement is given by such purchaser or his assigns to such redemptioner or debtor. *If such purchaser or his assigns shall* for a period of one month from and after such demand, *fail or refuse to give such statement, such redemptioner or debtor may,* within sixty days after such demand, *bring an action in any court of competent jurisdiction to ,compel* an accounting and *disclosure of such rents and profits, and until fifteen days from and after the final determination of such action the right of redemption is extended to such redemptioner or debtor."* (Italics added.)

This section however must be read in connection with certain others which we now set forth. Chapter 55 of Title 104 deals with "Foreclosure of Mortgages," and two sections therein are important, which so far as material here read:

104-55-1: "There can be but one action for the recovery of any debt or the enforcement of any right secured by mortgage upon real estate or personal property, which action must be in accordance with the provisions of this chapter. *Judgment shall be given adjudging the amount due,* with costs and disbursements, *and the sale of the mortgaged property,* or some part thereof, *to satisfy said amount* and accruing costs, and *directing the sheriff to proceed and sell the same according to the provisions of law relating to sales on execution,* and a special execution or order of sale shall be issued for that purpose." (Italics added.)

104-55-6: "Sales of real estate under judgments of foreclosure of mortgages and liens are subject to redemption as in case of sales under executions generally. * * *"

Chapter 37 of Title 104 deals with executions and as far as material here reads:

104-37-29: "Upon a sale of real property the purchaser is substituted for and acquires all the right, title, interest and claim of the judgment debtor thereto; and when the estate is less than a leasehold of a two-years' unexpired term the sale is absolute. In all other cases the real property is subject to redemption as provided in this chapter. * * *"

104-37-35: *"Until the expiration of the time allowed for redemption, the court may restrain the commission of waste on the property by* order granted, with or without notice, on the application of the purchaser or the judgment creditor. *But it is not waste for the person in possession of the property at the time of sale, or entitled to possession afterwards, during the period allowed for redemption, to continue to use it in the same manner in which it was previously used,* or to use it in the ordinary course of husbandry, or to make the necessary repairs of buildings thereon or to use wood or timber on the property therefor, or for the repair of fences, or for fuel for his family while he occupies the property." (Italics added.)

104-37-36: *"When real property has been sold on execution, the purchaser thereof,* or any person who may have succeeded to his interest, *may, after his estate becomes absolute, recover damages for injury to the property by the tenant in possession after sale* and before possession is delivered under the conveyance." (Italics added.)

The last section of the chapter (104-37-40) deals with "redemptions on Sales under Trust Deeds." It provides for redemption from such sales in the same way as from execution sales; provides for giving of a similar certificate of sale, and the execution and delivery of a deed at the expiration of six months if there is no redemption.

These statutes give rise to the following questions:

1. Do the provisions quoted above from Chapter 55 fix the rights as between the purchaser and the mortgagor or owner of the premises on foreclosure sale as the same rights which exist between the purchaser at an execution sale and the judgment debtor on an unsecured debt, or are those sections referring to executions merely procedural sections covering only the way or method in which a sale and redemp-

tion shall be made and not attempting to define, limit, or grant rights to either?

2. Under Section 104-37-29, supra, when is the purchaser substituted to *all the right and title, etc.*, of the judgment debtor—at time of the sale or at time of the deed?

3. Who is entitled to the possession during the redemption period?

4. Is such possession merely a naked one, or does it carry with it the usufruct or use and benefit of the property?

5. Can the purchaser or a redemptioner compel the judgment debtor in possession to pay rent or the value of the use and occupation during the redemption period?

We shall note them in order.

1. Even a casual reading of Section 104-55-1, supra, reveals that the reference to provisions of the law relating to sales on execution, in that section, has merely procedural significance, i. e., it does not attempt to fix or define any rights of the mortgagor or mortgagee in reference to the property, but merely directs that in making the sale under foreclosure proceedings the sheriff shall proceed in the same way as he does in making sales under executions generally.

But Section 104-55-6, supra, is more than a procedural section; it involves more than the method by which redemptions may be made. It declares in effect that all persons who could redeem were the sale made on an execution issued on a straight money judgment in personam, shall have the same rights to redeem, and in the same way, when the sale is made in foreclosure proceedings. This section confers and defines the extent of the right to redeem as well as providing the method in which a redemption shall be made. Both the right and the method shall be as provided in the law governing sales on execution.

2. This question has never before been considered in this state and our attention has not been called to any case which has considered or answered the same. The statute reads:

104-37-29: "Upon a sale of real property the purchaser is substituted for and acquires all the right, title, interest and claim of the judgment debtor thereto; and when the estate is less than a leasehold of a two-years' unexpired term the sale is absolute. In all other cases the real property is subject to redemption as provided in this chapter. * * *"

When does the purchaser *acquire all* the *right, title, interest and claim* of the judgment debtor? Does he acquire it at the time the property is bid in at the sale, or upon expiration of the redemption period? We have no hesitancy in holding it is at the end of the redemption period, and not at the time of bidding in the property. It is self-evident that · the purchaser does not have *all* the *right or title* of the judgment debtor until redemption has expired. *The right of possession* is one the judgment debtor has at the time of sale, and that right remains in him until the execution of the sheriff's deed. So too the legal title is often in the judgment debtor and that cannot vest in the purchaser until after the redemption period, and he cannot under any circumstance obtain that at the sale, and so too is the right of redemption. So also all crops harvested during the redemption period belong to the debtor or person in possession and cannot be claimed by the purchaser under the sale.

It is evident from both logic and other provisions of the statute that it was not intended that this provision should be effective until the expiration of the redemption period. That is to say, that the sale which is initiated when the property was offered for sale by the sheriff and bid in by the purchaser is a continuing matter and not ■ concluded and completed until the expiration of the redemption period. Then when the sale is consummated and completed, the purchaser is subrogated to and acquires all the right, title, interest, and claim of the judgment debtor in and to the property. Until that time the interest of the purchaser is an equitable interest, subject to be lost or cancelled or taken away by the debtor or any redemptioner or their assigns upon payment of the sale price with interest.

A redemption is not a resale or repurchase. It is generally consummated without the knowledge of the purchaser at the time, and without his consent and perhaps often against his will. The money is generally paid to the sheriff who voids or annuls as it were the sale and cancels the certificate. This interpretation is further evidenced by the provisions of Section 104-37-35 and 104-37-36. R. S. U. 1933.

The courts of New York have designated the purchaser's estate during the redemption period as a lien of a new species acquired by the sale, and somewhat different from the judgment lien. *Bissell* v. *Payn,* 20 Johns., N. Y., 3; *Van Rensselaer* v. *Sheriff of Onondaga County,* 1 Cow., N. Y., 443, 449; *Smith* v. *Colvin,* 17 Barb., N. Y., 157, 162; *Snyder* v. *Stafford,* 11 Paige, N. Y., 71, 76. To call it ■ a lien, even under their practice is a somewhat loose designation and was made in connection with establishing the principle that title does not pass to the purchaser until execution and delivery of the deed. And such is the recognized rule now in practically all states. If the legal title had already passed there would be no necessity for a conveyance. *Page* v. *Rogers,* 31 Cal. 293, 301; *McLaughlin* v. *Bank of Park City,* 22 Utah 473, 63 P. 589, 54 L. R. A. 343.

In a very general way and speaking loosely, the interest of the purchaser on execution sale and during redemption period may be called a lien, as it signifies an interest in the property which may be cancelled, lost, or voided upon payment of a certain sum of money. But it is more than this. The purchaser obtains a right, which is some- ■ what inchoate and may be perfected into a perfect title by no other act than the execution of a deed pursuant to a sale already made. It is more than a right to have satisfied out of the property a sum charged against it. It is a right which may be defeated by payment of such sum. The purchaser has bought the land from the sheriff and paid for it, upon a sale, which may be voided or in effect rejected by the debtor by the simple expedient of him repaying to the purchaser the amount paid with interest within a limited

time. It is also conditioned that the purchaser may lose the property by the repayment to him of his bid with interest by a lienor on the property. If such repayment be not made within the time, the right to a conveyance becomes absolute, that is, the conditions upon which it was predicated have not materialized, and the sale is completed and consummated. Until this time the purchaser had an equitable estate in the land under a conditional sale, which becomes absolute by lapse of time without performance of the conditions indicated above, the only ones which can defeat the purchase. Said the *Vice-Chancellor in New York Life Ins. Co. v. Bailey,* 3 Edw. Ch., N. Y., 416, 417: "A sale by the sheriff gives the purchaser, under a certificate, an inchoate right to the land, if not an interest in the land itself; and it is such a right as will ripen into a title unless the property be redeemed from him." In such sale the purchaser is not subrogated to and does not acquire all the right, title, estate, interest, or claim of the judgment debtor until the expiration of the redemption period.

3. The judgment debtor or his assigns or the person in possession at time of sale is entitled to the possession of the premises during the redemption period, as evident from the cases cited on that question, supra.

4. 5. Is such possession a mere naked one, or does it carry with it the usufruct or use the benefit of the property? California has held that such possession is a mere naked right of possession and the purchaser is entitled to the usufruct or value of the use and possession of the property during redemption period. But that was under a statute different from ours, as we shall point out. Our statute under consideration (Section 104-37-37, R. S. U. 1933) was adopted in February, 1870. While California now has a corresponding section substantially similar, it was not adopted in that state until 1872, so the constructions there made are not implied as read into our statute. Prior to 1872 the California statute (the one under which her courts laid down the interpretation relied upon by appellants, to-wit:

*Harris* v. *Reynolds,* 13 Cal. 514, 515, 73 Am. Dec. 600; and *Walker* v. *McCusker,* 71 Cal. 594, 12 P. 723; *Hill* v. *Taylor,* 22 Cal. 191) contained only the first sentence of the paragraph reading:

"The purchaser from the time of sale until a redemption, and a redemptioner from the time of his redemption until another redemption, is entitled to receive from the tenant in possession the rents of the property sold or the value of the use and occupation thereof."

Under that section the California courts held that the rents belonged wholly to the purchaser as of right and he was not required to account for them on the redemption price. They were a sort of bonus to induce someone to bid on the property. And if redemption were had the owner or a redemptioner paid the purchase price with interest, and without credit for any rents collected by the purchaser. Moreover none of those early cases held that the owner in possession was liable for rents. In the earliest case to lay down the California rule, *Reynolds* v. *Lathrop,* 7 Cal. 43, the court under the limited statute just quoted held that the purchaser could collect the rents from a renter or tenant of the owner, holding that the effect of the sale under the statute was equivalent to an assignment of the lease, and expressly declined to hold that the term "tenant in possession" included the judgment debtor in possession at the time of sale. It is interesting to note at this point that Stephen J. Field, the author and sponsor of the California Practice Act, in his points as counsel in *Reynolds* v. *Lathrop, supra,* says:

"By our statute, a purchaser of real estate at a sheriffs sale, is not at once put into possession. He must wait six months; and if, during this period, the judgment-debtor chooses to redeem, he can do so by paying the purchase money, and eighteen per cent besides; but in the meantime, the purchaser receives the rents of the property sold, *which are held not by the debtor, but by tenants of his.* This last provision was inserted in the statute really for the benefit of the debtor— to increase the amount of bids upon a sale." (Italics added.)

And in *Harris* v. *Reynolds,* 13 Cal. 514, 73 Am. Dec. 600, the court said that the purchaser's right to the rents was purely statutory and enforced merely because the statute last above quoted gave the purchaser the rents outright, independent of redemption. It seems it was considered a sort of bonus to induce purchasers to bid. And not until 1887 or 17 years after we adopted our statute did California directly hold (*Walker* v. *McCusker,* 71 Cal. 594, 12 P. 723) that the owner was included within the term "tenant in possession" without discussion, and citing as authority the Lathrop Case, supra, which had declined to so hold, and *Hill* v. *Taylor,* supra, which was an action to enjoin waste during redemption and compel an accounting for the proceeds of a mine worked out during redemption period, when there was no redemption.

With the holdings of the California cases we do not agree. They are based upon a statute very different from ours. We opine that our statute was written as it is to avoid the California rule, and deny to the purchaser the rights to the rents from the owner in possession. Be it noted that the California Practice Act made an absolute grant of rents or value of use and occupation to the purchaser, with or without redemption, and the court held he was entitled to them because of the express and unqualified grant of the statute. *Harris* v. *Reynolds,* supra. Our statute when adopted in 1870, and continued to the present day, specifically denied the grant of rents and profits to the purchaser and expressly recognizes them as the property and money of the owner. Let us note again some provisions of our statute (104-37-37) :

"The purchaser from the time of sale until a redemption, and a redemptioner from the time of his redemption until another redemption, is entitled to receive from the tenant in possession the rents of the property sold or the value of the use and occupation thereof. *But when any rents or profits have been received by the judgment creditor or purchaser,* or his or their assigns, from the property thus sold preceding such redemption, *the amounts of such rents and profits shall be a credit upon the redemption* money * * *" (Italics added.)

We note that any rents collected prior to redemption *shall be a credit upon the redemption money.* How could it be a Credit upon the redemption money, the debt, if it was the property of the creditor? It is the property of the judgment debtor or owner, and as such when it comes into the hands of the creditor (the purchaser is in the status of creditor), the law expressly applies it as a credit upon the debt, the redemption money, and the debt is reduced by that amount. Of course if the debt be thus reduced down to a small amount, but be not paid in full and redemption period expires the deed issues. *Petersen* v. *Jurras,* 2 Cal. 2d 253, 40 P. 2d 257. If however there are any rents due and owing to the owner when the deed issues, they may vest in the purchaser or his assigns, for he then is subrogated to and acquires all right and title to everything the owner could assert with respect to the property, including title, possession, growing crops, rents, etc. The purchaser can only receive the rents until a redemption from him for he then ceases to be a creditor and has no debt upon which he can apply the money otherwise due the owner. So likewise a redemptioner can only receive the rents during the period until redemption from him, because he must stand as a creditor with a debt upon which he can apply the rents, the money of the owner. It may be further noted in the section of the statute that when an accounting of rents or profits is demanded of the purchaser by the owner, the right of redemption is extended by such time as elapses between demand and the rendering of an accounting. If an action be instituted to compel an accounting, the time of redemption is extended until 15 days after final determination of such suit, even though it may take years, and even though no redemption is had. And how can an action for accounting be maintained to compel the application of the rents to the mortgage debt, if the rents belong to the purchaser? The fact that such suit is authorized by the statute is in effect a statutory declaration that the rents belong to the owner of the property sold and not to the purchaser. One further phrase may be noted

at this point. The statute says: "receive from the tenant in possession the rents of the property sold or the value of the use and occupation thereof." It may be argued that "value of the use and occupation" includes the owner in possession. It may well cover other things than rents reserved, including situations of tenants at will, or at sufferance; leases when there are no rents reserved, royalties, croppers' shares, and numerous other rights. Let us bear in mind that the purchaser acquires only the rights of the owner in the property, and that includes the right to receive rents or value of use and occupation from third parties in possession but not from self. A man cannot be indebted to himself, nor can he owe rent to himself for use of premises he holds. Even the California courts have held that, "the estate remains that of the mortgagor in the character of owner, and must continue so, with all the incidents of ownership, until, by a foreclosure and sale, a new owner is substituted." *Guy* v. *Ide*, 6 Cal. 99, 65 Am. Dec. 490. No new owner is substituted until the sale under decree is consummated by a conveyance. *Carlquist* v. *Coltharp*, 67 Utah 514, 248 P. 481, 47 A. L. R. 765; *McLaughlin* v. *Park City Bank*, 22 Utah 473, 63 P. 589, 54 L. R. A. 343; *McMillan* v. *Richards*, 9 Cal. 365, 70 Am. Dec. 655; *Knight* v. *Fair*, 9 Cal. 117; *Goodenow* v. *Ewer*, 16 Cal. 461, 462, 76 Am. Dec. 540. And the California court in *First National Trust & Savings Bank of San Diego* v. *Staley*, 1933, 219 Cal. 225, 25 P. 2d 982, took the position that the mortgagor or owner in possession could not be restrained from collecting rents for the use of the premises during the redemption period, from the tenants in possession, and such mortgagor or owner in possession was entitled to the rents, use, occupation and benefit of the premises during redemption period. The Utah court in *McLaughlin* v. *Park City Bank,* supra, said this: "An execution creditor is not entitled to possession and rents of the property levied upon, before sale, and before the time for redemption has expired." It is clear and undoubted that the judgment debtor is, in contemplation of law, the owner of the property

during the six months allowed for redemption, and that he has a right to its use and occupation. We note briefly three other reasons why the owner in possession should not be chargeable with rents during redemption period.

The right of redemption, and the redemption period are provided by statute to give the owner an opportunity to save the property to himself. If he is chargeable with rents or the payment for his use and occupation, an added burden is imposed upon him, thus handicapping him in his efforts to redeem rather than helping him to the opportunity to save the property. If however the property is not in the actual possession of the owner but in the hands of a lessee or renter, the payment of the rents reserved to the purchaser and their application to the debt which must be paid before the owner saves the property decreases the debt to be paid and thereby increases the chances of redemption. Furthermore, to say that the owner is entitled to the possession of the property during redemption but is not entitled to the use and occupation thereof is a paradox that destroys itself. Property is the right to the use and occupation of a thing or to the usufruct and enjoyment thereof, and without such right there is no such thing as property rights in it. Ownership of property is the right to enjoy the beneficial interest, the use and occupation, or to receive the usufruct thereof. Without such right there is no ownership. Such thing as an ownership of realty without any beneficial interest or a possession of real property without right of use and occupancy is an absurdity if not an impossibility. The very statement refutes itself.

There are three cases in which one may be, by law and against his will, divested of his title to real property by forced sales. These are execution sales generally, foreclosure sales and tax sales. While tax sales are slightly different from the others in some particulars yet on principle they are analogous. All are sales by operation of law; all are sales made to effect payment of an obligation of the owner which he has failed to pay; all are based upon a lien attaching to

the property for nonpayment of the debt; each sale can only be made after notice by advertising as prescribed by law; each initiates as sale, subject to being defeated by payment of the debt, called a redemption; in case of default in payment, in redemption, each requires the completion and consummation of the sale by the execution, issuance, and delivery of a deed by an officer of the law, instead of the owner; in each case if the proceedings were regular such deed divests the owner of his title and invests the purchaser with title and the right to possession; and in each case the purchaser obtains no right to possession until he has received the deed. It would seem therefore that in each of such cases the law would sell the same interests and rights in the property and the purchaser would receive the same rights and interests as against the owner. In tax sales the rule is definite that until the deed issues the owner is entitled to the possession, use and occupation, usufruct, and beneficial interest of the property, and is not liable to the purchaser at the sale for rent or value of use and occupation. We fail to see any reason, in law or logic, why a different rule should apply in foreclosure sales.

The judgment of the District Court of Salt Lake County is affirmed. Costs to respondents.

HANSON and MOFFAT, JJ., concur.

WOLFE, Justice (dissenting).

As much as I would like to hold that an owner, whose property has been sold under mortgage foreclosure, has the right to occupy the premises during the period of redemption without liability for the value of the use and occupancy, because I think the law the other way I must dissent. I think the results have been attained by a judicial wishful thinking. The bare results of the court's opinion may be correct for reasons not considered in that opinion but suggested at the end of this opinion, but the substantive propositions of law laid down appear to me to be wrong and unsupported and

improperly explained by the analysis and interpretations of the cases considered.

The question of whether a mortgagor has the right to occupy during the period of redemption with or without liability to respond for the value of the use and occupation for such period is, under our statutes, a very close question. There are sections which seemingly conflict in their implications. A determination of the question should be made only after a thorough consideration and exposition of the various provisions of the execution sales statute, together with a consideration of the decisions of California, North Dakota, Montana, Washington, and South Dakota and Idaho where similar sections have been considered. Both parties in this case seem to admit that the mortgagor is entitled to occupancy during the redemption period. Consequently it seems unnecessary to consider whether such is the law but only the question as to whether the mortgagor-occupant is required to pay for the value and use of that occupation during that period of redemption. We are not compelled and should not make that study of such an important matter in this opinion. However, the court's opinion not only finds that the mortgagor has the right of occupancy during the period of redemption but that the purchaser is not entitled to the value of the use and occupation during that period. In order to arrive at that conclusion it holds that the interest of the purchaser really does not mature in the purchaser until the period of redemption has passed, or in other words that the sale is only consummated at the end of that period. It becomes necessary, therefore, that this latter proposition and all the statements and reasoning by which it is arrived at be placed under the microscope of critical analysis.

The opinion lays down the proposition that under Section 104-37-29, R. S. U. 1933, the purchaser is substituted to all the right, title and interest of the mortgage debtor *only at the expiration of the redemption period.* I cannot agree that the sale is consummated only at the end of the period of redemption. The opinion concludes that what the statute

says is a "sale" is not a sale but a conditional sale or a "sort of lien" or that the purchaser seems to have only an "equitable estate" or a right which is "somewhat inchoate." We are left somewhat in the dark as to what the purchaser really obtains. If he obtains an equitable estate or an estate in equity, we can have no quarrel with the opinion on that score for such estate in equity would carry with it as an incident the rents and the right to the value of the use and occupation, unless there was a redemption. Indeed, the statute expressly gives the purchaser these emoluments. But the opinion holds that the mortgagor continues to be not only the holder of the title in trust for the purchaser but that such mortgagor is in fact the true owner. This cannot be the case. In *Walker* v. *McCusker,* 71 Cal. 594, 12 P. 723, it was stated [page 725] : "After his purchase the plaintiff was the owner in equity; and thereafter, subject to her right of redemption, *she held title for him."* (Italics added.) The statute (Sec. 104-37-29) says unequivocally "upon a *sale* of real property the purchaser is *substituted for and acquires* all the *right, title, interest and claim* of the judgment debtor thereto," etc. (Italics added.) But the opinion says this cannot be so because the debtor has at least one right, that is the right of occupancy. But I see nothing expressed in the statutes which gives the mortgagor or his assigns such right. However, it may be that he has the bare right of possession. California and North Dakota so hold. But as we shall later see, according to the North Dakota cases, the effect of the statute is to separate the right of possession from ownership during the redemption period. It is true that the right of possession or occupancy ordinarily follows title. It is also generally true that one who is entitled to the possession is entitled to the emoluments. If one has the equitable or beneficial estate, he ordinarily would have the right of possession. But he can separate the two by lease—his own act—or they may in rare instances, as in this case if we so construe the statute be separated by statute.

But since the wrong reasoning in the opinion springs not from the statement that the mortgagor or owner has the right of possession during the redemption period which may or may not be correct under our statute, but from the more fundamental proposition that the sale is not completed until six months after the "sale," it behooves us further to examine that proposition. The proposition becomes important because it may form the basis for a number of other propositions. If it is correct, there is point to its corollary that the mortgagor or owner before sale really owns the rents during the period of redemption. If, however, the purchaser is, in equity the owner after purchase, he then obtains the rents or the value of the use and occupation by virtue of that ownership and does not hold them as a mere offset to his debt. In fact, as a purchaser, he may not be a creditor. That the statute contemplated the sale to give the purchaser all the right, title, interest, and claim of the mortgagor or owner at the time of purchase at the sheriff's sale appears not only from the express language of section 104-37-29, but appears to be the inevitable inference from Section 104-37-37. That section reads in part: "The purchaser *from the time of sale* until a redemption," etc. (Italics added.) If "sale" is to be construed as not consummated until expiration of the redemption period, it would make this language rather ludicrous. Then the "time of sale" would be at the end of the six months' period. It would be most difficult to find a period *from* this time *until* redemption. This part of Section 104-37-37, and the portion which specifies that the purchaser "is entitled to receive from the tenant in possession the rents of the property *sold* or the value of the use and occupation thereof" (italics added), together with the express language of Section 104-37-29, are all of a piece and admit of only one conclusion: That the purchaser owns the property in equity and as an incident to such ownership is entitled to the rents or value of the use and occupation from the time of the sheriff's sale and that a redemption, if it takes place, is a redemption from such ownership and as a part of the

redemption the redemptioner is entitled to have the rents credited on the redemption price because the purchaser will receive in redemption what he paid, plus interest. If the statute had not provided specifically that the purchaser was entitled to the "rents * * * or the value of the use and occupation" but provided only that he should succeed at the sheriff's sale to "all the right, title, interest and claim," it would seem to follow that he was entitled to the rents or value of use and occupation from the time of the sheriff's sale as an incident to his ownership. The fact that the statute, Section 104-37-37, provides expressly for that right places beyond dispute, it seems to us, the purchaser's right to the same.

The law was drawn to adjust practically on an equitable basis the matter of redemption so that the redemptioner would have his property as if he had never lost it and the purchaser would have back his purchase money and interest. Each would be made whole. But this is *only the effect* of a redemption. There is still a redemption, and one can hardly redeem that which he already has. So it must be a redemption from the purchaser who has the ownership in equity. In case there is no redemption, the purchaser continues to have the same status he has had since the sheriff's sale and which only a redemption can disturb, i. e., an estate in equity subject to the mortgagor's obtaining the outstanding legal title at the end of six months.

In passing, it is interesting to note that the very term "redemption" implies that a sale has taken place from which a redemption may be had. The definition given by Webster's International Dictionary is as follows: "to repurchase, ransom, release, rescue; deliverance, restoration, recovery, reclamation." If the mortgagor or owner before sale still retains ownership subject only to its being severed in six months, there is nothing he need rescue his property from. The act of preventing severance would not be one of redemption but one of prevention. The true conception is

that the sheriff sells the property to the purchaser. It is a complete sale, but subject to be defeated by a condition subsequent, to wit: redemption. See *People's Sav. Bank of Fresno* v. *Jones*, 114 Cal. 422, 46 P. 278. It is interesting to note that in no state where the statute is like our Section 104-37-37 do the courts hold as in the prevailing opinion. Without exception the courts of California, North Dakota, and Montana, under similar statutes, have held that the purchaser obtains the beneficial title and is the owner except as to bare outstanding legal title. (See cases in latter part of this opinion.)

From the implications of the statute the mortgagor or former owner may or may not have the right of possession during this six months. It must be admitted that as to the question of who has the right of possession the statutes furnish conflicting implications. But before this question is considered, regard should be tendered to the statement in the opinion that "tenant in possession" means only some person other than the judgment debtor or owner holding possession. There is not a word in the statute which so restricts the term. It was used in its generic sense as said in *Harris* v. *Reynolds*, 13 Cal. 514, 73 Am. Dec. 600, to designate the class of persons from whom the purchaser was to receive rents. The Harris Case held:

"The language is not that, when a tenant of the debtor is in possession, the tenant shall pay the purchaser, or that the debtor, when in possession, shall not; but the phraseology designed, evidently, to fix a general right, applying to all cases of tenancy, for none are excluded. * * *

"The definition of 'tenant in possession' embraces, within the natural and usual meaning of the words, a judgment debtor as well as his lessee."

The case of *Clifford & Co.* v. *Henry*, 40 N. D. 604, 169 N. W. 508, so holds. Likewise, the case of *Citizens' National Bank* v. *Western Loan & Building Co.*, 64 Mont. 40, 208 P. 893.

That this is the definition of "tenant in possession" is fortified by the language of Section 104-37-36. This section reads:

"When real property has been sold on execution, the purchaser thereof, or any person who may have succeeded to his interest, may, after his estate becomes absolute, recover damages for injury to the property by the tenant in possession after sale and before possession is delivered under the conveyance."

If "tenant in possession" means only the lessee of the owner or judgment debtor then no action could be had against such owner for injury to the premises during the period of redemption. Furthermore, Section 104-37-36 is only harmonious with a conception that the purchaser is the owner of all the right, title, and interest in the mortgaged property. On what other basis could he recover for injury to the property? If it belongs to the mortgagor until six months after *sale,* how could such purchaser recover for a damage done to the estate of another. And it would be only after the redemption period that he would know whether or not he really had an estate which was injured. The fact is that it is his estate, but if redeemed then he is not interested in what injuries it may have received. If there is a redemption, he cannot recover, because the estate which he received has by subsequent condition gone out of him.

I think the opinion becomes hopelessly confused in its consideration of the reasons for the rent money going to the purchaser. Since the opinion lays down the principle that the mortgagor or owner is not only entitled to possession but has all the rights and attributes of title until six months after "sale," it of course is precluded from holding that rents or value of use and occupation are an incident of the purchaser's status. But since the rents and value of use and occupation are given to the purchaser by statute, some reason must be found in the opinion for giving these to the purchaser. And what reason do we find? That they are given to the purchaser as an offset to his debt. But the idea occurred to the opinion writer that in some cases the purchaser

might not be the judgment creditor. So there is inserted in parentheses that the purchaser "is in the status of a creditor". In the status of a creditor as to what? If he never was a creditor, how can he succeed to that credit by becoming a purchaser? How can a stranger to the note secured by the mortgage who is a purchaser be "in the status of a creditor"? Why is he entitled to the rents and value of use and occupation as a credit on an indebtedness which never existed as to him? Furthermore, it is elementary that even the judgment creditor occupies a different status as a purchaser. His judgment is satisfied if the property is bought in for the debt and costs, and he owns the property, not as judgment creditor but as purchaser. Why give him credit on an indebtedness which is no longer owing? The fact that in case of mistake, where the purchaser is the judgment creditor, there is better opportunity to rectify the mistake by placing the parties in status quo does not make him any the less a purchaser and not a creditor.

The prevailing opinion goes on to say that our statute "specifically denied the grant of rents and profits to the purchaser and expressly recognizes them as the property and money of the owner." The statute does not so provide. It provides just the opposite. It provides that they shall go to the purchaser because he has all the right, title, and interest in the property; but it further provides that if the owner or other redemptioner redeem, the money so collected by the purchaser be credited on the redemption price. This is harmonious with the conception that the purchaser is entitled to the rents and profits as an incident to his interest, but that if his equitable estate (not merely an equity but a full right recognized in equity) which he has obtained by the purchase, is defeated by redemption, he must pay over the rents and profits because all he is entitled to is to recoup his purchase price with interest. In the anxiety of the opinion to establish the doctrine that these rents and value of use and occupation belonged all the time during the redemption period to the execution debtor, despite the express statutory

provision that the purchaser was entitled to them, we are told that they are paid to the purchaser as a credit upon his debt. And in order to arrive at this conclusion a purchaser who never was a creditor is treated as a creditor. He seems to be in the "status of a creditor."

But it seems to me that the crowning absurdity of the whole reasoning is revealed in the statement that "if however there are any rents due and owing to the owner when the deed issues, they may vest in the purchaser or his assigns, for he then is subrogated to and acquires all right and title, to everything the owner could assert with respect to the property, including title, possession, growing crops, rents," etc. This is the first instance in the law that I have come across that rents or profits owing to an owner before title passes become the property of one who buys the real estate. But certainly if the "sale" does not become complete until six months after the "sale" and the rents belong to the owner, no passage of title by "subrogation" passes such moneys to the purchaser. Nowhere in the law can such a principle be discovered. It reveals the plight the opinion finds itself in in order to justify the statement that the ownership of the property remain in the mortgagor for six months after sheriff's sale rather than in the purchaser as the statute declares. If the ownership is in the purchaser, it follows naturally that the rents and value of use and occupation belong to him. If his estate in equity is defeated by the happening of the condition subsequent—to wit, redemption— he, by statute, is required to account and credit on the purchase price the rents which, up to such time, belonged to him.

The opinion cites *Harris* v. *Reynolds,* supra, as holding that the rents were given to the purchaser for the benefit of the owner as a sort of bonus so that the bid would be high, independent of redemption. An examination of that case does not disclose such reasoning or language. The case is well-reasoned. It places the purchaser's right to rents and to the value of use and occupation, not on any idea of bonus

but squarely on the theory that the equitable estate is in the purchaser and such estate carries the right given by statute to the rents and value of use and occupation. It states:

"As the law holds him (the purchaser) to the responsibilities of owner, it entitles him to the benefits of owner, so far as the right to the profits is concerned; but it gives this right without allowing the purchaser to disturb the possession of the debtor."

The treatment of the California cases by the opinion is in some cases wrong and even quite deceptive. In the first place, it attempts to distinguish the California cases on the ground that California did not require the purchaser to account for rents collected upon a redemption. *Harris* v. *Reynolds,* supra; *Walker* v. *McCusker,* supra, and *Hill* v. *Taylor,* 22 Cal. 191, are said to have held that the rents belonged wholly to the purchaser on the ground that the California section (at that time Section 286 of the California Practice Act) did not have any provision such as ours requiring the purchaser to account for rents collected from the "tenant in possession" and hence *for that reason* the purchaser was held to be entitled to the rents. No such reason was even intimated in any of the California decisions. Besides such cannot be the case because in the case of *Petersen* v. *Jurras,* 2 Cal. 2d 253, 40 P. 2d 257, California held again that the purchaser was entitled to the rents under a statute which did contain a provision almost word for word identical with our provision regarding the duty to account upon redemption. Consequently, the reason assigned by the opinion for the early California decisions completely fails. And well it must because where both the early California statute and our present statute provided that the purchaser obtained all the interest of the owner and also provided that the purchaser was entitled to the rents or value of the use and occupation, it seems no basis for a distinction so important as the one between ownership and non-ownership that in one case the purchaser did not in case of redemption have to account by statute for the rents, etc. (California early statute), and in the other case he did (our statute).

The opinion proceeds to say that none of the early California cases held the owner liable for the rents, citing *Reynolds* v. *Lathrop*, 7 Cal. 43, decided in 1857. But in 1859 in the case of *Harris* v. *Reynolds*, supra, in answer to the contention that the language of the statute applied only to a tenant of the owner and not to the owner himself, it was definitely answered to the effect that a "tenant in possession" included the judgment debtor in possession at the time of sale as well as his lessee. For proximity we repeat its specific language as follows:

"The phrase 'the tenant in possession,' is a generic term, intended to designate the class of persons from whom the purchaser was to receive the rents. The language is not that, when a tenant of the debtor is in possession, the tenant shall pay the purchaser, or that the debtor, when in possession, shall not; but the phraseology designed, evidently, to fix a general right, applying to all cases of tenancy, for none are excluded."

In 1863 *Hill* v. *Taylor*, 22 Cal. 191, held that the purchaser was entitled to the proceeds of a mining claim which was, during the period of redemption, worked by the judgment debtor. A receiver was appointed to take charge of it.

In view of the express holding in *Harris* v. *Reynolds*, supra (decided in 1859—or eleven years before we took our statute from California), and in view of the holding in *Hill* v. *Taylor*, supra, it is difficult to see how the opinion can state that "none of those early cases held that the owner in possession was liable for rents." It is also difficult to see how the opinion in the face of the Harris Case, decided in 1859, and in view of *Hill* v. *Taylor*, supra, decided in 1863, can make the statement that "not until 1887 or 17 years after we adopted our statute did California directly hold (*Walker* v. *McCusker*, 71 Cal. 594, 12 P. 723) that the owner was included within the term 'tenant in possession.' "

Of course it follows that if as early as 1859 California held the statute to give to the purchaser the equitable title and that he was entitled to the value of the use and occupation from the mortgagor or former owner during the period

of redemption, and we adopted that very language from the California statute in 1870, that we adopted the construction which the court put on *that* language. The fact that the California statute did not adopt the part about the accountability until 1872 or two years after we took the portion to which the decision in 1859 pertained can make no difference, especially in view of the California case of *Petersen* v. *Jurras,* supra, where the California Court gave the same construction to its statute with the accountability features added as it did in *Harris* v. *Reynolds,* supra, when they were absent.

And it becomes not only difficult to ascertain how, but astounding that the opinion can state that such holding in the McCusker Case was "without discussion, and citing as authority the Lathrop Case, supra, which had declined to so hold." A glance at the McCusker Case reveals the following: That not only was the Lathrop Case cited (which did not "decline to hold" that the judgment debtor was a tenant in possession, but expressly left the question open), but there were cited *Harris* v. *Reynolds,* supra, and *Hill* v. *Taylor,* supra. In fact, the former is quoted from. Other cases are also cited, but the above two are definite early authorities on which the McCusker Case rests.

Completely erroneous therefore, is the impression that the McCusker Case rested only on the Lathrop Case. Also erroneous is the statement that *Hill* v. *Taylor,* supra, was a case of enjoining waste. It definitely stated that "the averments in the complaint bring the case within the principles laid down by this Court in the case of *Harris* v. *Reynolds,* 13 Cal. 514 [73 Am. Dec. 600]." It did mention the fact that the working of a mining claim was not a mere occupancy but a depletion and in that sense a waste or destruction of the property itself. But since that was the natural use of the property, the opinion did not intend to put its decision on the ground of waste nor was such "waste" enjoined as says the court's opinion in this case. In fact, the judgment debtor occupier was permitted to go on working the claim, but a

receiver was appointed to take charge of the proceeds from the working. There was no injunction of "waste."

And the opinion again seems very misleading when it states that the Lathrop Case, supra, "declined" to hold that an "owner" was included within the term "tenant in possession." This certainly gives the impression that the Lathrop Case held to the contrary. In reality, the Lathrop Case stated as follows:

> "As to the question, whether words 'tenant-in-possession,' would include the judgment-debtor, in a case where he has possession at the time of sale, so as to make him responsible for use and occupation, it is unnecessary to determine."

Under this language a statement that the court in that case had "declined to rule" that the owner was included in the term "tenant in possession" is very misleading to the reader.

In a very short space we have three utterly erroneous statements, to wit: That the purchaser in California was held by the early cases to be entitled to the rents because the statute did not have a provision for accounting to the redemptioner; Secondly, that none of the early California cases held a "tenant in possession" to include the "judgment debtor in possession at the time of sale," and that it was not until 1887 that this was held (when it was so held in 1859 and in 1863); and the implication that the McCusker Case rested on the authority of only two cases in which the question of whether "tenant in possession" included the judgment debtor was not discussed, whereas the McCusker Case expressly cites and quotes from *Page* v. *Rogers*, 31 Cal. 293, 294, decided in 1866 and *Harris* v. *Reynolds*, supra, decided in 1859, and cites *Hill* v. *Taylor*, supra, decided in 1863, the latter two of which expressly considered this question.

That in California the purchaser obtains the full title in equity is made clear in *Page* v. *Rogers*, supra, where it is held:

"The legal title remains in the judgment debtor, with the further right in him, and his creditors having subsequent liens, to defeat the operation of a sale *already made* during a period of six months; after which the *equitable estate* acquired by the purchaser becomes absolute and indefeasible, and the *mere dry, naked legal title* remains in the judgment debtor, with authority in the sheriff to divest it by executing a deed to the purchaser. Even during the period which elapses between the sale and expiration of the time for redemption the statute regards the purchaser as the owner in equity, and gives him the rents and profits, or the value of the use and occupation, without any liability to account for them in case of a redemption [afterward amended by statute as above pointed out]. In short, it gives him the entire beneficial interest in the property, except the actual possession." (Italics added.)

The purchaser's right may be sold on execution sale to satisfy a judgment against him. The sale may be defeated by redemption, a condition subsequent, and in this wise only is it a conditional sale.

Of course, the statements that our statute "was written as it is to avoid the California rule" and that our "statute * * * specifically denied the grant of rents and profits to the purchaser and expressly recognizes them as the property and money of the owner," which statements all seem to be founded on our statutory provision regarding accountability to the redemptioner (Section 104-37-37), immediately fall by the wayside in view of *Petersen* v. *Jurras,* decided 1936, supra, which construes a provision like ours relating to accountability.

The opinion refuses to follow the California cases and yet attempts to distinguish them. The case of *First Nat. Trust & Savings Bank of San Diego* v. *Staley,* 219 Cal. 225, 25 P. 2d 982, does not hold as the opinion states it does that the owner or mortgagor was not a tenant in possession and that the owner is entitled to the rents, use and occupation, and benefits of the premises during the redemption period. It holds that the owner cannot be enjoined from possession or collecting rents but leaves him accountable for them. The purchaser was enjoined from invading the mortgagor's possession in order to collect rents. In California the law is

that the mortgagor or owner is entitled to possession during the period of redemption, but the rents go to the purchaser. In *Petersen* v. *Jurras,* supra, it was expressly held that the possession was not in issue but that the purchaser was authorized to collect the rents under Section 707 of the Code of Civil Procedure which provides as does our Section 104-37-37, R. S. U. 1933, that the purchaser shall be entitled to the rents or value of the use and occupation. The case recognized the *ownership in the purchaser* of the rents with responsibility to account only in case of redemption. It would appear, therefore, that the opinion wrongly concludes that in California the execution debtor in possession was entitled to the rents or benefits during possession. The Petersen Case, 40 P. 2d 259, expressly says:

"As to the proposed conclusion that plaintiff [execution debtor] was entitled to the 'fruits of said right of possession,' presumably the rents collected by defendant, the ruling of the trial court was clearly correct."

The ruling of the trial court was that the purchaser was entitled to them.

The opinion says,

"Furthermore, to say that the owner is entitled to the possession of the property during redemption but is not entitled to the use and occupation thereof is a paradox that destroys itself."

We know of no holding or assertion that one who is entitled to the possession is not entitled to the use and occupation.

The contention is not that use and occupation can be separated from possession, but that the owner in possession after sale must account for *the value* of the use and occupation. The opinion uselessly sets up and knocks down a straw man, forgetting the earlier statement in the opinion that California holds this possession a mere right of occupancy subject to a right in the purchaser to the value of the use and occupation. In the California case of *Petersen* v.

*Jurras,* supra, it was held that the "right to possession of the property was not an issue in the case," Likewise, in this case right to possession is not an issue, only the question of whether the purchaser may recover for the use and occupation without notification that he intends to do so. That is all that need be decided in this case.

The opinion goes on to say:

"property is the right to the use and occupation of a thing or to the usufruct and enjoyment thereof, and without such right there is no such thing as property rights in it. Ownership of property is the right to enjoy the beneficial interest, the use and occupation, or to receive the usufruct thereof. Without such right there is no ownership. Such thing as an ownership of realty without beneficial interest or a possession of real property without right of use and occupancy is an absurdity if not an impossibility."

Every day owners of property lease it so as to deprive themselves of right of occupancy or possession. I do not see, therefore, that ownership without right to use and occupancy is an "absurdity if not an impossibility." But here again as all along in the opinion the question of who is the owner during redemption period is asserted or assumed. I find no valid reasons given in the opinion. Such reasons would need to be very convincing in the face of the language of the statutes which seem expressly to give the purchaser all the right, title, interest, and claim of the owner on "sale" by the sheriff and give him by another section the rents or value of the use and occupation during the redemption period, and in the face of opinions from every state having statutes like ours holding to the contrary.

The opinion seems to have difficulty in conceiving that a purchaser could own the rents and yet have to account for them on redemption. The courts of California had no difficulty. I see nothing to prevent a rule that "A" owns the rent because in equity he is the owner, but that if "B" redeems from him "A" must account for those rents. I see very much less difficulty in this conception than in the one which holds the judgment debtor the owner of the rents but

that the purchaser, by becoming "subrogated" to the owner's title at the end of six months, becomes entitled to them.

The opinion draws comfort from the analogy of a tax sale where the tax debtor is permitted to remain in possession until the redemption period expires and is entitled to all rents and value of use and occupation. The difference is self-evident. The tax statutes do not expressly separate the rents, profits, value of use and enjoyment from the possession and give them to the purchaser at the tax sale. The right of the purchaser at an execution sale and a tax sale are governed by statute. It happens that the statutes are different. That is the reason "in law and logic why a different rule applies in foreclosure sales" than in tax sales.

This opinion thus far considers the questions raised in this case in connection with a critical analysis of the court's opinion. We desire to set out affirmatively our views hereunder by way of a summary:

(1) Our statutes expressly provide that the purchaser at the mortgage sale obtains all the right, title, interest and claim of the owner; hence, there is in the purchaser the estate in equity subject to defeasance by redemption.

(2) It follows as an incident from this that such purchaser is entitled to the rents and to the value of the use and occupation during the redemption period, subject to accounting only in case there is a redemption; and it follows just as inevitably that such rents do not belong to the former owner, and only on redemption must the purchaser account for them. The language of Section 104-37-37, R. S. U. 1933 so specifies in harmony with this conception.

(3) The term "tenant in possession" includes the execution debtor as well as his lessee.

(4) The question of who, between owner and purchaser, is entitled to possession during the period of redemption is a difficult one in view of conflicting implications of our statutes—the implication from Sections 104-37-29 and 104-37-37 being to the effect that possession should follow the right, title, and interest as it passes to the purchaser by the

sale. But the implication of Section 104-37-35 is to the effect that the mortgagor or occupant has the right to remain in the premises. This, however, may be a right optional with the purchaser. Such right of occupancy during the period of redemption is given by the California decisions but seems based on the cases of *McClintock* v. *Powley,* 210 Cal. 333, 291 P. 833; *First Nat. Trust & Savings Bank* v. *Staley,* supra, which in turn seems to be based on a statement in *Harris* v. *Reynolds,* supra, decided in 1859; and *Hill* v. *Taylor,* supra, decided in 1863, to the effect that the purchaser takes his right without allowing the purchaser to disturb the possession of the debtor. In *Hill* v. *Taylor,* supra, the court recognized the right of the mortgagor to stay in possession but appointed a receiver to preserve to the purchaser of the mining claim the profits which were derived from gold mining on the land by the mortgagor Taylor. It is difficult to determine just how the California courts came to the conclusion from the California statutes that the mortgagor or owner before sale was permitted to remain in possession. Most probably it was on the ground stated in the Staley Case, where it was said that Section 706 of the Code of Civil Procedure (same as our Section 104-37-35) authorizes a suit to restrain waste on the property, conceding this right to the mortgagor. California (Civ. Code, § 2927), as North Dakota (Comp. Laws 1913, § 6740) has a statutory provision reading:

"A mortgage does not entitle the mortgagee to the possession of the property, unless authorized by the express terms of the mortgage * * *."

The North Dakota courts put their decisions giving occupancy to the mortgagor on this statute, but only one case in California did so—*People's Sav. Bank* v. *Jones,* 114 Cal. 422, 46 P. 278—and perhaps for good reason because in such case we are dealing with a purchaser and no longer with a mortgagee. Such provision was meant to prevent operation of the old common law rule where a mortgagee having title

could take possession and was not intended to apply to a purchaser at a foreclosure sale. But if such is a basis for the Dakota and California decisions, it cannot be such in this state because we have no such statute.

In Montana, according to *Citizens' Nat. Bank* v. *Western Loan & Building Co.*, 64 Mont. 40, 208 P. 893, the purchaser seems to be entitled to possession during the period of redemption although Section 9448 of the Montana Revised Code of 1921 is identical with our Section 104-37-37, R. S. U. 1933. But it is significant that in Montana, up to 1921, under statutes such as ours the purchaser was held entitled to possession during the period of redemption. It required a special act (Section 9449, Rev. Codes of 1921) to permit the execution debtor occupying the premises as his home to remain in possession of them.

In Washington a special statute (Rem. Rev. Stat. § 602) permits a judgment debtor occupying the premises as a homestead to remain in possession during the period of redemption, but the Washington statutes expressly provide that "the purchaser from the day of sale * * * shall be entitled to the possession of the property."

In North Dakota it was held in *Clifford & Co.* v. *Henry*, 40 N. D. 604, 169 N. W. 508, that the mortgagor had the right of possession during the period of redemption. Sec. 7762, Compiled Laws of N. D. 1913, is the same as our Section 104-37-37. The same holding was made in *Farm Mortgage Loan Co.* v. *Pettet*, 51 N. D. 491, 200 N. W. 497, 36 A. L. R. 598. In *Carlquist* v. *Coltharp*, 67 Utah 514, 248 P. 481, 47 A. L. R. 765, without any discussion or the citing of a single case (and evidently by way of pure dictum), this court said [page 483] :

"The mortgagor has, therefore, the legal title; and is entitled to retain possession of the premises until the expiration of the time for redemption, unless the terms of the mortgage give the mortgagee the right of possession."

It may be of value in connection with the points discussed under this heading to note the common law rules regarding

possession of mortgaged property. Under the common law the mortgagee took the form of an absolute conveyance. In very early times the mortgagor who gave such deed had no way of recovering his property. Later equity stepped in to prevent injustice and permitted redemption by payment of the debt and interest and required reconveyance by the mortgagee. This was called the equity of redemption. Still later equity entertained an action to cut this equity of redemption after a certain period of default, otherwise the mortgagee might never know when he could deal with the property. If the mortgagee who had title did not take possession, he of course was not entitled to any of the rents or value of the use and occupation. If he did take possession, he obtained them by virtue of his possession. At common law the occupancy did carry with it the right to the rents or value of the use and occupation. It requires a statute to separate them. By the very nature of the process at common law there was nothing which quite corresponded to our statutory redemption period. The nearest approach is that period between the time when the mortgagor defaulted and the time the mortgagee came into equity to have the equity of redemption foreclosed. During such time whichever had possession was entitled to all the incidents of possession without obligation to disgorge. We are of the opinion that our statute attempted to fix these rights between mortgagor and mortgagee by giving the former the right of occupancy and the ownership to the purchaser, for the reasons assigned in the case of *Harris* v. *Reynolds,* supra, stated as follows:

"Time is not given for the purpose of enabling the debtor to make a profit out of the estate, but for the purpose of enabling him to raise the money to redeem. There is no presumption that the property sells for less than its present value; there is no compulsion on the part of the debtor to redeem, if he is able, and if he does not, the purchaser runs the risk of the title, the depreciation or destruction of the property, and in fact, all the risks attending the ownership of property."

Statutes gave the rents and value of occupancy to the purchaser because it made him the beneficial owner, and because as said further in *Harris* v. *Reynolds,* supra:

"As the law holds him to the responsibilities of owner, it entitles him to the benefits of owner, so far as the right to the profits is concerned."

But in this case it is not necessary to determine whether the purchaser or mortgagor or his assignee has the right to possession during the period for redemption under the provisions of the Utah statutes because both parties in this case assume that the mortgagor may retain it against the purchaser. While leaning that way, but without deciding it, I am willing for the purposes of this case to concede it. But the real question is:

(6) Can the purchaser, if the mortgagor or his grantee retains possession during the period of redemption, obtain the value of the use and occupation? Under a statute like ours in California it appears that he may. *Walker* v. *McCusker,* supra. In this case it was held that the purchaser could sue in assumpsit for the value of the use and occupation. So held in *Clifford & Co.* v. *Henry,* supra, (in construing a statute identical with Sec. 104-37-37, R. S. U. 1933); and *Citizens Nat. Bank* v. *Western Loan & Building,* supra, (under a Montana statute also identical with our statute, Section 104-37-37, R. S. U. 1933).

Under our statutes I see no escape logically from such a holding. Ordinarily the benefits, the rents, and the profits are an incident to the possession and therefore if the mortgagor is entitled to possession they should go to him. But as stated in the Pettet Case, supra, the provision that the purchaser shall be entitled to the value of the use and occupation changes the ordinary rule that the right to rents and profits follows the possession and the fee and gives them to the purchaser subject only to an accounting if there is a redemption.

(7) Must the purchaser give the mortgagor or owner notice if he intends to hold him for value of use and occupation so that he may choose whether he will vacate or pay for the use and occupation? This point has not been argued. It would seem that if A sold a house to B and B did not seek

possession and A stayed in until B desired possession then B could not recover from A for the use and occupation during the interim. In such case it would seem that A held for B rather than against him; that he was in fact caring for the property. If this were the prevailing opinion, it would be necessary to ask for briefs on this point before a conclusion in that regard could be made. I reserve the point. If notice is required of the purchaser that if the occupant remains in he will be held for the value of the use and occupation, this opinion should agree in the results reached in the court's opinion. But since my disagreement is with the substantive law laid down in the opinion, and since I reserve for future discussion the question of notice, and the question of who between owner and purchaser has the right of occupancy during the redemption period, this opinion must take the form of a complete dissent.

FOLLAND, Chief Justice.

I concur in the views expressed by Mr. Justice WOLFE in his dissenting opinion.